IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


THOMAS MOORE,                        :
                                     :
          Plaintiff                  :
                                     :
     v.                              :   CIVIL NO. 3:CV-12-223
                                     :
MARIROSA LAMAS, ET AL.,              :   (Judge Conaboy)
                                     :
          Defendants                 :

_____

**MEMORANDUM**
**Background**

Thomas Moore, an inmate presently confined at the State Correctional Institution, Albion, Pennsylvania (SCI-Albion), initiated this civil rights action pursuant to 42 U.S.C. § 1983. Following service of the Original Complaint, counsel entered an appearance on behalf of the Plaintiff.  An Amended Complaint was subsequently filed.  See Doc. 28.  Defendants responded to the Amended Complaint by filing a motion seeking entry of partial dismissal.  The motion (Doc. 35), which is opposed in part, is ripe for consideration.

Named as Defendants are the Pennsylvania Department of Corrections (DOC); and the following officials at Plaintiff's prior place of confinement the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-Rockview):  Superintendent Marirosa Lamas; Unit Manager Kenny Granlund; Captain Lynn Eaton; and Correctional Officers Perks, Hall, and Fisher.[1]

_____

1.  Plaintiff was transferred from SCI-Rockview to SCI-Albion on or about December 19, 2011.

1

Plaintiff states that prior to entering SCI-Rockview he was diagnosed as having a cardiac condition as well as post traumatic stress disorder from a rape which allegedly occurred during his pre-trial confinement in a Philadelphia area prison.  See Doc. 28, ¶ 3.  During the Fall, 2010, Defendant Granlund purportedly "engaged in improper sexual contact with Plaintiff in Granlund's office on several occasions."  Id. at ¶ 12.

On October 12, 2010 and November 8, 2010, Moore claims that he filed administrative grievances with Superintendent Lamas regarding the purported sexual abuse by Unit Manager Granlund. In a third grievance filed on or about December 3, 2010 Moore asserted that Granlund had singled him out among several inmates all of whom were engaging in the same conduct by issuing the prisoner a disciplinary charge.  When Plaintiff was thereafter taken to Granlund's office, the Defendant allegedly subjected the prisoner to verbal abuse.  See id. at ¶ 15.

The Amended Complaint next contends that on or about December 6, 2010 Moore voluntarily visited Granlund in the latter's office regarding the disciplinary charge and accused the Defendant of writing lies about him.  It is alleged that Unit Manager Granlund became "enraged" and physically assaulted Moore.  See id. at ¶ 18.  Plaintiff purportedly suffered injuries from the attack which required a two day stay in the prison infirmary.

On December 8, 2010, Plaintiff states that he was visited by Defendants Lamas and Eaton after he left the infirmary.  It is alleged that those two Defendants refused Plaintiff's request that Granlund's attack be reported to the Pennsylvania State Police. However, they did provide Moore with the necessary forms to

2

initiate a private criminal complaint against Granlund.  The Plaintiff was also transferred to the prison's Restricted Housing Unit (RHU) where he was purportedly held in a cold cell with no blankets, telephone or exercise privileges and human waste on the floor for the ensuing ten (10) months.

On December 9, 2010, Plaintiff had a disciplinary hearing regarding charges by Granlund that Moore had been in an unauthorized area on December 8, 2010, refused to leave, and had threatened the Unit Manager.[2]  Plaintiff was found guilty of those allegations and sanctioned to serve 270 days in the RHU.[3]

Thereafter, Plaintiff contends that he filed grievances against Granlund regarding the assault and lack of subsequent medical care which went unanswered.  It is also alleged that Plaintiff received a contaminated food tray on December 13, 2010, was denied meals, grievance forms, as well as medical care, and suffered destruction of his personal legal papers in retaliation for raising complaints against the Unit Manager.  The Amended Complaint also maintains that Plaintiff was offered a twenty thousand ($ 20,000.00) dollar settlement of his claims against Granlund by someone who apparently was employed by the DOC during a January 17, 2011 meeting.

It is next alleged that on February 19, 2011, one day after Moore complained of not receiving food, prison staff including Defendants Perks, Fisher, and Hall "mopped cleaning fluid into

---

2.  Prior to this hearing Moore asserts that he was warned by Eaton and the hearing examiner not to talk about his pending sexual abuse claims against Granlund and to only address the pending charges.

3.  Presumably the same ten (10) months of RHU confinement previously mentioned by Plaintiff.

plaintiff's cell" causing him to pass out onto the concrete floor from the fumes and injure his head.  Id. at ¶ 42. Moore was eventually released from the RHU on October 10, 2011 and transferred to SCI-Albion on December 19, 2011.  The Amended Complaint concludes that Defendants' actions violated both federal and state law.  Moore also asserts pendent state law tort claims.

Defendants' motion for partial dismissal asserts: (1) the claims for monetary damages against the individual Defendants in their official capacities are barred by the Eleventh Amendment; (2) the DOC is not a properly named defendant; (3) the allegations of retaliation should be dismissed against all Defendants with the exception of Unit Manager Granlund; (4) the failure to respond to grievances claims against Superintendent Lamas lack merit; (5) the false imprisonment and conspiracy claims are subject to dismissal; (6) the allegations under the Fourth and Fourteenth Amendment as well as the Pennsylvania state constitution lack merit; and (7) Additional Defendants Eaton, Perks, Hall and Fisher were improperly added to this action.

Plaintiff does not oppose the first two arguments but has filed an opposing brief addressing Defendants' remaining contentions.

## Discussion

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual

4

allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief. <u>See</u> Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. <u>Id</u>. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." <u>Iqbal</u>, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. <u>See id</u>. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." <u>Id</u>. at 562; <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his

complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).

## **Official Capacities**

Defendants initially contend that the claims for monetary damages against the individual Defendants in their official capacities are barred by the Eleventh Amendment.  <u>See</u> Doc. 36, p. 5.  Plaintiff does not oppose this argument.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages.  <u>Walker v. Beard</u>, 244 Fed. Appx. 439, 440 (3d Cir. 2007); <u>see also</u> <u>A.W. v. Jersey City Public Schools</u>, 341 F.3d 234, 238 (3d Cir. 2003).  Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency.  <u>Garden State Elec. Inspection Serv. v. Levin</u>, 144 Fed. Appx. 247, 251 (3d Cir. 2005).  As such, Moore's damage claims brought against the individual Defendants in their official capacities are considered to be against the state itself and are barred by the Eleventh Amendment.[4]

## **DOC**

Defendants' second argument asserts that because it is an agency of the Commonwealth of Pennsylvania, the DOC is not a properly named defendant.  <u>See</u> Doc. 36, p. 6.  This argument is also unopposed.

The United States Supreme Court has ruled that a § 1983

---

4.  It is noted that Plaintiff does not seek injunctive or declaratory relief.

action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." Alabama v. Pugh, 438 U.S. 781, 782 (1978).  The Court of Appeals for the Third Circuit has similarly concluded that the Pennsylvania Board of Probation and Parole could not be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977).

        In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court reiterated its position that state agencies are not "persons" subject to liability in § 1983 actions brought in federal court.  The Court noted that a § 1983 suit against a state official's office was "no different from a suit against the State itself." Id. at 71.  "Will establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court." Howlett v. Rose, 496 U.S. 356, 365 (1990).

        Pursuant to the above discussion, the DOC is clearly not a properly named defendant in a § 1983 action and therefore is entitled to entry of dismissal.

**Rule 15**

        Defendants next maintain that Additional Defendants Eaton, Perks, Hall, and Fisher are entitled to dismissal because prior defense counsel did not consent to the submission of an amended complaint and Plaintiff did not obtain leave of court to file an amended complaint.  See Doc. 36, p. 13.

Plaintiff opposes this argument on the grounds that his Amended Complaint was timely prior to the submission of a responsive pleading by Defendants.

Federal Rule of Civil Procedure 15(a) provides:

> **(a)   Amendments Before Trial.**
>   (1) **Amending as a matter of course.**   A party may amend its pleading once as a matter of course within:
>     (A)   21 days after serving it; or
>     (B)   if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Rule 15(a)(2) additionally provides that "[t]he court should freely give leave when justice so requires."

A review of the docket shows that Plaintiff did not previously submit an amended complaint.  In addition, the Amended Complaint was filed prior to the submission of a responsive pleading by the Defendants.  Based upon an application of Rule 15 to those undisputed facts, Moore did not require either the consent of opposing counsel nor court approval to file his Amended Complaint.

Accordingly, the request for dismissal of the claims against Defendants Eaton, Perks, Hall, and Fisher as being improperly added will be denied.

**<u>Personal Involvement</u>**

Defendants' next argument maintains that Superintendent Lamas is entitled to entry of dismissal because the claims against the Superintendent cannot be based upon either a theory of

respondeat superior or based upon her failure to respond to Moore's grievances and institutional requests.[5]  See Doc. 36, p. 8.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

---

5.  Defendants correctly note that although Lamas refused Plaintiff's request that the Superintendent contact the State Police, she did provide Moore with the necessary forms to initiate a private criminal complaint.

Prisoners have no constitutionally protected right to a grievance procedure.  See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).

Pursuant to those decisions, any attempt by Plaintiff to establish liability against any Defendant solely based upon their handling of his administrative grievances or complaints does not support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Based upon the above discussion, any claims against Superintendent Lamas solely based upon her supervisory role within

10

the prison, or her purported failure to respond to internal grievances and requests are subject to dismissal.[6]

However, the Amended Complaint does allege that Lamas and Eaton had actual knowledge of unconstitutional conditions relating to Plaintiff's RHU confinement and failed to take any remedial measures.  Since that allegation sufficiently satisfies the personal involvement requirement of Rode at this juncture in the proceedings, those claims against Eaton and Lamas will be allowed to proceed.

**Conspiracy**

Defendants maintain that the Amended Complaint does not set forth a viable conspiracy claim because there are no facts asserted to show any agreement by Defendants to violate Plaintiff's federally protected rights.[7]  See Doc. 36, p. 10.

Plaintiff counters that the Amended Complaint shows that at the least there was a "tacit" agreement to stifle his complaints. See Doc. 37, p. 8.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain

---

6.  Based upon a review of the Amended Complaint there is no assertion that Lamas implemented or approved any prison policy which violated Plaintiff's constitutional rights.

7.  Count IV of the Amended Complaint is titled false imprisonment and conspiracy.

supportive factual allegations." Rose, 871 F.2d at 366.  Moreover,
"[t]o plead conspiracy adequately, a plaintiff must set forth
allegations that address the period of the conspiracy, the object
of the conspiracy, and the certain actions of the alleged
conspirators taken to achieve that purpose." Shearin v. E.F.
Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

       The essence of a conspiracy is an agreement or concerted
action between individuals.  See D.R. by L.R., 972 F.2d at 1377;
Durre, 869 F.2d at 545.  Consequently, a plaintiff must allege with
particularity and present material facts which show that the
purported conspirators reached some understanding or agreement or
plotted, planned and conspired together to deprive plaintiff of a
protected federal right.  Id.; Rose, 871 F.2d at 366; Young, 926
F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F.
Supp. 532, 539 (E.D. Pa. 1982).  Where a civil rights conspiracy is
alleged, there must be some specific facts in the complaint which
tend to show a meeting of the minds and some type of concerted
activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).
A plaintiff cannot rely on subjective suspicions and unsupported
speculation.  Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir.
1991).

       There are no averments of fact in the Amended Complaint that
reasonably suggest the presence of an agreement or concerted
activity between the Defendants.  Moore has simply not alleged any
facts showing any communication or cooperation among any Defendants
from which an agreement could be inferred.  While Plaintiff has set
forth some claims of constitutional misconduct, he has not
adequately alleged that those actions were the result of a

conspiracy.  Dismissal will be granted with respect to the claim of conspiracy.

**Fourteenth Amendment**

The Amended Complaint alleges that Plaintiff was placed in the RHU on December 8, 2010, possibly on administrative custody status pending the outcome of pending disciplinary charges.  The following day Moore was found guilty of multiple disciplinary charges and sanctioned to a 270 day term of disciplinary custody. Plaintiff asserts that this period of RHU confinement constituted false imprisonment.  This claim will be construed in part as asserting a violation of the Fourteenth Amendment.[8]

Defendants assert that the Amended Complaint to the extent that it alleges that Plaintiff was improperly placed in disciplinary custody in violation of his rights under the Fourteenth Amendment is subject to dismissal.  See Doc. 36, p. 10. Plaintiff counters that this claim is viable because he was the victim of false charges, was prevented from testifying at his disciplinary hearing about Granlund's prior sexual abuse, and denied the opportunity to present testimony by correctional officers.  See Doc. 37, p. 10.

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  The Supreme Court has mandated a two-part analysis of a procedural due process claim:  first, "whether the asserted individual interests are encompassed within the . . . protection of

_____

8.  To the extent that Plaintiff is asserting a pendent state law tort claim, said allegation is addressed separately herein.

'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is obviously unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. <u>Meachum v. Fano</u>, 427 U.S. 215, 223-26 (1976).  In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-73 (1974), the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed.  <u>Wolff</u>, 418 U.S. at 563-71.  The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. <u>Id</u>.

An additional procedural requirement was set forth in <u>Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill</u>, 472 U.S. 445, 453-56 (1985).  In <u>Hill</u>, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.  The Third Circuit Court of Appeals, and

14

other courts applied the Wolff principles to prison disciplinary hearings which did not result in withdrawal of good time credit but instead in disciplinary or administrative segregation. E.g., Grillo v. Coughlin, 31 F.3d 53 (2d Cir. 1994); Griffin v. Spratt, 969 F.2d 16 (3d Cir. 1992); Cook v. Lehman, 863 F. Supp. 207 (E.D. Pa. 1994).

However, the United States Supreme Court's subsequent decision in Sandin v. Conner, 515 U.S. 472 (1995), marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. In Sandin, the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. The nature of an inmate's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Supreme Court held that the procedural protections in Wolff were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id.   The Sandin Court relied on three factors in making this determination: (1)confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the

15

inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Courts within this circuit, applying <u>Sandin</u> in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement. <u>See</u> <u>Torres v. Fauver</u>, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest; <u>Smith v. Mensinger</u>, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest); <u>Vorhauer v. Conrad</u>, No. 3:CV-90-2196 (M.D. Pa. Jan. 29, 1997) (Vanaskie, J.) (inmate's confinement in disciplinary custody for ninety days in accordance with DOC procedures did not give rise to a protected liberty interest). Plaintiff contends that he was found guilty of multiple misconduct charges and as a result, served a 270 day (approximately ten month) RHU term.

Considering the rules of law set forth in <u>Sandin</u> and the subsequent line of decisions cited above, this Court finds that the procedural due process claims set forth by Plaintiff because the 270 day term of disciplinary custody was not of such magnitude as to implicate a protected liberty interest under <u>Sandin</u>.[9]

---

9.  Plaintiff's action to the extent that it may allege that he was improperly placed in administrative custody status for approximately one (1) day is equally meritless because the magnitude of any such admittedly brief placement in administrative custody did not implicate a protected liberty interest.

**Fourth Amendment**

Moore also claims that his rights under the Fourth Amendment were violated.  See Doc. 1, ¶ 66.  It appears that this contention may relate to the assertion that Plaintiff's legal papers were destroyed.  Defendants seek dismissal of this claim as the Fourth Amendment protections are not applicable within the confines of the prison cell.  Since Plaintiff's opposing brief does not specifically address this argument, it will be deemed unopposed.

The Fourth Amendment prohibits unreasonable searches and seizures.  Inmates are also protected from cruel and unusual punishment under the Eighth Amendment.  However, reasonable searches within the prison walls are constitutionally permissible. See  Carroll v. United States, 267 U.S. 132, 147 (1925); Allegheny County Prison Employees v. County of Allegheny, 124 Fed. Appx. 140, 141-42 (3d Cir. 2005).  When addressing the legality of searches courts must balance "the need for the particular search against the personal rights that the search entails." Bell v. Wolfish, 441 U.S. 520, 559 (1979).  It is also well recognized that one of the consequences of entering a correctional facility is a diminished expectation of privacy.

Moreover, any claim raised by Plaintiff relating to the seizure of his personal legal papers is more properly asserted as a violation of his right of access to the courts.[10]  Accordingly the unopposed request for dismissal of the Fourth Amendment claim will be granted.

---

10.  Furthermore, the only correctional official who is actually linked with the assertion of destruction of legal property has not been named as a defendant.  Consequently, it does not appear that Moore intends to pursue such a claim.

17

**<u>Retaliation</u>**

Defendants next contend that with exception of the allegations against Unit Manager Granlund, the Amended Complaint fails to assert a viable retaliation claim. <u>See</u> Doc. 36, p. 6. Specifically, it is asserted that Moore has not demonstrated a link between his exercise of constitutionally protected conduct and the alleged constitutional misconduct attributed to the other Defendants.  They assert that since Plaintiff only filed grievances against Granlund the assertions of retaliation against the other Defendants must fail.

Plaintiff counters that although the other Defendants were not the subjects of his internal complaints, the Amended Complaint alleges that those officials attempted to cover up Granlund's misconduct and silence Moore. <u>See</u> Doc. 37, p. 5.  It is especially noted that alleged retaliatory acts took place after Plaintiff refused to accept a twenty thousand ($20,000.00) dollar settlement. Moreover, the assertion that Perks, Halls, and Fisher specifically mopped chemicals into his cell one day after Moore raised a complaint of being deprived food sufficiently sets forth a retaliation claim.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity. <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  (<u>Id</u>.)(quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to

deter a person of ordinary firmness' from exercising his First Amendment rights."   (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).   Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."   Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).   The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[11]   See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

It is alleged that Plaintiff has made a prima facie case, the burden shifts to the Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."   Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).   When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.   Rauser, 241 F.3d at 334.

It is alleged that on February 19, 2011, Defendants Perks, Fisher, and Hall "mopped cleaning fluid into plaintiff's cell when he complained of not getting any food."   Doc. 28, ¶ 42.   The

---

11.   Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.   Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

submission of grievances is a constitutionally protected conduct. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Thus, this Court will accept that the first prong of Rauser, i.e., that the Plaintiff be engaged in a constitutionally protected activity, has been satisfied.

However, Plaintiff has clearly not demonstrated that his exercise of a constitutionally protected right was a substantial or motivating factor behind the alleged mopping of chemicals into his cell as required by the third prong of Rauser.  The mere fact that Moore made a complaint one day earlier about not receiving a meal does not sufficiently show that said complaint was a substantial or motivating factor in the alleged mopping of chemicals into his RHU cell the following day as required under Rauser.  However, although a viable retaliation claim has not been stated, this Court does find that the allegation against Perks, Fisher, and Hall is sufficient to set forth a claim that those three Defendants subjected Moore to unconstitutional conditions of confinement.[12]

With respect to Superintendent Lamas and Captain Eaton, the Amended Complaint alleges that those two officials visited

---

12.    The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities."  Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).
      The allegations against Defendants Perks, Fisher, and Hall with respect to their alleged conduct of February 19, 2011 will be allowed to proceed to the extent that they assert a claim of being exposed to unconstitutional conditions of confinement.

Plaintiff in his cell on December 8, 2010 .  During this visit they refused Plaintiff's request that they contact the State Police but provided him with the necessary forms to pursue a private criminal complaint.

It is also alleged that Lamas and Eaton had Plaintiff placed in the RHU, failed to respond to his grievances/requests and that Eaton told the inmate to limit his disciplinary hearing testimony to the issue of whether he had committed the alleged infraction and not to talk about Granlund's alleged sexual misconduct.  Although Plaintiff's assertions could support a claim that Eaton and Lamas' actions  may have been undertaken in an effort to cover up improper conduct by Granlund, there are no facts asserted which could support a claim that Lamas and Eaton were retaliating against the Plaintiff for engaging in constitutionally protected activity as required under Rauser.[13]

**State Law Claims**

Finally, federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

28 U.S.C. § 1367(c)(3) (1997) provides that a district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction.  Once the basis for federal jurisdiction disappears,

---

13.    Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

a district court should only exercise its discretion to entertain pendent claims if extraordinary circumstances exist.  New Jersey Department of Enviromental Protection v. Glouchester Enviromental Management, 719 F. Supp. 325, 337 (D. N.J.  1989).

A decision as to whether this Court should exercise jurisdiction over any state law tort claims against the Defendants will be held in abeyance pending resolution of all dispositive motions.  An appropriate Order will enter.[14]


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge



DATED: FEBRUARY 7, 2014

---

14.  In an effort to bring this matter to timely eesolution, a status conference will be scheduled by the Court.