## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS MOORE,

No. 3:12-CV-00223

Plaintiff,

(Judge Brann)

v.

KENNY GRANLUND, *et al.*,

Defendants.

## MEMORANDUM OPINION

### MARCH 18, 2020

## I.    BACKGROUND

Thomas Moore, a Pennsylvania state prisoner, filed this civil rights complaint—which he later amended with assistance from counsel—alleging that several defendants violated his rights during his incarceration at the Pennsylvania State Correctional Instruction Rockview.[1]  Over the course of several years, United States District Judge Richard P. Conaboy[2] issued a series of rulings that narrowed the relevant issues and dismissed several defendants from the action.

In February 2014, Judge Conaboy dismissed several claims from the amended complaint,[3] leaving only four remaining claims: (1) Kenny Granlund engaged in improper sexual contact with Moore during the fall of 2010; (2) Granlund physically

---

[1]    Docs. 1, 28.

[2]    Judge Conaboy died in November 2018 and this matter was administratively reassigned to the undersigned.

[3]    Docs. 39, 40.

assaulted Moore on December 6, 2010; (3) conditions of confinement at prison violated the Eighth Amendment and Defendants Hall, Perks, and Fisher mopped chemicals into Moore's cell on February 19, 2011, which resulted in Moore passing out and striking his head on the ground; and (4) Granlund retaliated against Moore for filing grievances.[4]

In September 2017, Judge Conaboy granted partial summary judgment in favor of Defendants after concluding that Moore failed to exhaust administrative remedies as to all remaining claims except claims that (1) Granlund engaged in improper sexual contact with Moore during the fall of 2010, (2) Granlund physically assaulted Moore on December 6, 2010, and (3) Hall, Perks, and Fisher mopped chemicals into Moore's cell on February 19, 2011.[5]  Because Judge Conaboy only addressed whether Moore's claims were administratively exhausted, he permitted the parties to file motions for summary judgment that addressed the merits of Moore's remaining claims.[6]

The parties thereafter filed cross motions for summary judgment.[7]  Moore contended that he was entitled to summary judgment as a sanction for Defendants having failed to properly investigate Moore's allegations.[8]  Moore asserted that this

---

[4]   Doc. 103 at 3.

[5]   Doc. 103 at 31-62.

[6]   Doc. 104.

[7]   Docs. 105, 106.

[8]   Doc. 105.

failure was akin to spoliation of evidence, as it resulted in the purported loss of key evidence that would have supported Moore's claims.[9] Defendants in turn asserted that judgment should be entered in favor of Hall, Perks, and Fisher because there was no evidence that they poured toxic chemicals into Moore's cell.[10]

In September 2018, Judge Conaboy denied both motions.[11] As to Moore's motion, Judge Conaboy concluded that, although Moore's grievances were "not properly investigated in a timely and thorough manner,"[12] no remaining Defendants were involved in the failure to investigate, and there was no evidence of bad faith that could support the entry of judgment in Moore's favor.[13] Moreover, Moore was unable to point to any evidence lost as a result of the failure to investigate: there were no witnesses to the incidents with Granlund and the only physical evidence that was purportedly lost was lost as a result of Granlund's own actions.[14] Finally, Judge Conboy noted that an investigation had been conducted into the February 19, 2011 incident and, thus, no sanctions were warranted with regard to that incident.[15] As to Defendants' motion, Judge Conaboy concluded that Defendants failed to

---

[9]  *Id.*

[10]  Doc. 107.

[11]  Docs. 114, 115.

[12]  Doc. 114 at 6.

[13]  *Id.* at 3-8.

[14]  *Id.* at 6-7.

[15]  *Id.* at 7.

demonstrate the absence of a genuine issue of material fact.[16]   This Court thereafter

denied dueling motions for reconsideration after determining that Judge Conaboy

did not clearly err in denying the parties' motions for summary judgment.[17]

Defendants have now filed a motion *in limine* seeking the admission and

exclusion of certain evidence at trial.[18]   Specifically, Defendants argue that they

should be permitted to introduce evidence of: (1) Moore's use of multiple names and

birthdates; (2) Moore's failure to file tax returns; (3) Moore's prior convictions; and

(4) misconduct reports issued by Granlund to Moore.[19]   Defendants ask that this

Court bar Moore from presenting evidence of: (1) prior discipline of Defendants or

any witnesses; (2) grievances or lawsuits filed against Defendants or any defense

witnesses; (3) Moore's conditions of confinement in the restricted housing unit

("RHU"); (4) Granlund's personal or sexual life; (5) any alleged settlement offer

extended to Moore; (6) Moore's offer to submit to a polygraph examination; (7)

prison officials' failure to investigate Moore's allegations; and (8) Moore's personal

timeline, grievances, or other writings related to the alleged incidents.[20]

---

[16]   *Id.* at 8-10.

[17]   Docs. 127, 128.

[18]   Doc. 141.

[19]   Doc. 142 at 6-14.

[20]   *Id.* at 14-22.

Moore has filed a brief in opposition and opposes Defendants' motion in its entirety.[21]  The matter is now ripe for disposition and, for the following reasons, Defendants' motion *in limine* will be granted in part and denied in part.

## II.    DISCUSSION

Courts exercise discretion to rule *in limine* on evidentiary issues "in appropriate cases."[22]  While motions *in limine* may serve as a useful pretrial tool that enable more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity."[23]  "[M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation."[24]  Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context."[25]  Specifically, "*pretrial* Rule 403 exclusions should rarely be granted . . . a court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence."[26]

---

[21]  Doc. 144.

[22]  *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

[23]  *Frintner v. TruePosition*, 892 F.Supp.2d 699, 707 (E.D. Pa. 2012).

[24]  *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997).

[25]  *Leonard v. Stemetech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).

[26]  *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).

Regardless, "*in limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[27]

A.    Motions to Admit Evidence

The Court will first address Defendants' motion to admit certain evidence during trial. After examining the record, the Court will grant in part and deny in part the requests.

i.    *Evidence of Multiple Names and Birthdates*

First, Defendants argue that they should be permitted to present evidence at trial that Moore previously used multiple names and dates of birth.[28] Defendants contend that such evidence impacts Moore's credibility and is therefore admissible under Federal Rules of Evidence 608 and 611.[29] Moore in turn asserts that such evidence is not probative of his credibility, as he is of gypsy descent and, thus, was unsure of his birthdate or legal name.[30] To defend against allegations that his use of different names and birthdates implicates his honesty, Moore asserts that he would be required to mention his gypsy ethnicity, which may be prejudicial to him.[31]

Federal Rule of Evidence 608 allows parties to cross-examine witnesses on any issue that is "probative of the character for truthfulness or untruthfulness of . . .

---

[27]    *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

[28]    Doc. 142 at 6-8.

[29]    *Id.* at 7-8.

[30]    Doc. 144 at 9-11.

[31]    *Id.*

the witness."[32]  As the United States Court of Appeals for the Ninth Circuit has noted, "[l]ying about one's name constitutes specific conduct that implicates the [witness'] character for truthfulness."[33]  Although the United States Court of Appeals for the Third Circuit has not directly addressed the impeachment value of using false names or birthdates, in an analogous situation it held that a witness could be cross-examined "about numerous blank social security cards recovered from his apartment" as such "evidence tended to . . . show deceit, and it was therefore admissible to establish [the witness'] lack of truthfulness, not his character."[34]

In accordance with this case law, the Court concludes that Moore's past use of multiple names and dates of birth is generally admissible, as such information is probative of his truthfulness or untruthfulness.[35]  While Moore argues that he will need to reveal information about his gypsy ethnicity to counter this evidence, the Court does not find that this militates against admitting such evidence.  First, it

---

[32]  Fed. R. Evid. 608(b).

[33]  *United States v. Santiago-Ledezma* No. 98-50153, 1999 WL 450856, at *5 (9th Cir. June 28, 1999).  *See also United States v. Weekes*, 611 F.3d 68, 71 (1st Cir. 2010) (questions about witness' use of fake "social security numbers obviously went to credibility and was therefore admissible under Federal Rule of Evidence 608(b)"); *United States v. Ojeda*, 23 F.3d 1473, 1477 (8th Cir. 1994) (concluding that "past use of another name is probative for truthfulness"); *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 351 (S.D.N.Y. 2011) ("[T]he use of aliases and false information is indicative of a witness' character for truthfulness, and evidence of such use is properly admitted under [Rule] 608(b)").

[34]  *United States v. Irizarry*, 341 F.3d 273, 312 (3d Cir. 2003).

[35]  Although Moore contends that such information does not implicate his honesty because he was unaware of his legal name or date of birth, this does not explain Moore's use of *multiple* names or dates of birth, which undermines any assertion that the use of an erroneous name or date of birth was unintentional.

would not be necessary for Moore to discuss his ethnicity to address this issue. Moore could simply note that he did not possess a birth certificate for most of his life and was unsure about his legal name and date of birth. Second, the Court is able to conduct a *voir dire* sufficient to ensure that any jurors are not biased against people of gypsy descent. By carefully crafting questions aimed at discovering any prejudice, the Court should be able to sufficiently "reduce the possibility of ethnic prejudice."[36] Accordingly, the Court concludes that evidence related to the use of aliases or different dates of birth is admissible at trial, and Defendants' motion is conditionally granted.

### ii. *Evidence of Failure to File Tax Returns*

Next, Defendants ask that this Court permit evidence related to Moore's failure to file income tax returns, as Defendants contend that such evidence is probative of Moore's truthfulness or untruthfulness under Rule 608.[37] Moore argues that there is no evidence that he was required to file tax returns and, thus, his failure to so file does not implicate his truthfulness or lack thereof.[38]

Federal law provides that not all individuals must file income tax returns. Specifically, the relevant portion of the United States Code states that only individuals "having for the taxable year gross income which equals or exceeds the

---

[36] *United States v. Sarkisian*, 197 F.3d 966, 979 (9th Cir. 1999) (citing *Rosales-Lopez v. United States*, 451 U.S. 182, 193 n.8 (1981)).

[37] Doc. 142 at 8.

[38] Doc. 144 at 11.

exemption amount [plus the basic standard deduction]" are required to file income returns.[39]  Similarly, only the willful failure to file a required income tax return is criminal.[40]

Plainly, the failure to file an income tax return does not implicate one's credibility or honesty where one is not required to file such a return.[41]  Because there is no evidence that Moore was required to file income tax returns or that he owed the federal government money, the Court concludes that his failure to file income tax returns does not reflect upon his truthfulness or untruthfulness.  The Court will therefore conditionally deny Defendants' motion to admit evidence related to Moore's failure to file income tax returns.  Should Defendants proffer evidence that Moore was required to file said returns, the Court will revisit this decision, since Moore's failure to file required income tax returns would be probative of his truthfulness or untruthfulness.[42]

---

[39]  26 U.S.C. § 6012(a).

[40]  26 U.S.C. § 7203.

[41]  The Third Circuit case cited by Defendants is not to the contrary.  In *United States v. Sullivan*, the Third Circuit held that evidence that an included "fraudulent replies" in the tax forms that the individual filed with the Government was probative of his truthfulness or untruthfulness. 803 F.2d 87, 90 (3d Cir. 1986).  However, that situation differs with that here: in *Sullivan* the individual filed returns but included false statements within those documents, whereas here no returns were filed in the first instance.

[42]  *See United States v. Fairchild*, 46 F.3d 1152 (10th Cir. 1995) ("Clearly evidence of the appellant's failure to file tax returns is probative of truthfulness or untruthfulness"); *Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir. 1993) ("The total failure to file tax returns for a period of eight years should be similarly admissible on the issue of her truthfulness, subject to the discretionary considerations in Rules 403 and 608(b)").

### iii. *Evidence of Prior Felony Convictions*

Defendants next argue that the Court should permit evidence of Moore's 2006 convictions for robbery, criminal attempted theft by extortion, and theft by unlawful taking.[43] Defendants assert that, although the convictions do not categorically involve a dishonest act or false statement, they are admissible under Federal Rule of Evidence 609(a)(1), as they were punishable by more than one year imprisonment and their probative value outweighs any prejudicial impact.[44] Moore, in contrast, asserts that the prejudicial impact of admitting evidence related to those convictions outweighs any probative value from that evidence.[45]

"Rule 609 is premised on the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath."[46] That Rule provides that a witness' character for truthfulness may be attacked by evidence of a criminal conviction that (1) was punishable by more than one year imprisonment, if the probative value of the conviction is not substantially outweighed by the danger of unfair prejudice, or (2) "the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."[47] To determine whether the probative value of

---

[43] These convictions were the basis for Moore's incarceration at the time of the events underlying this action

[44] Doc. 142 at 8-15.

[45] Doc. 144 at 12.

[46] *Walden v. Georgia-Pac. Corp.*, 126 F.3d 506, 523 (3d Cir. 1997).

[47] Fed. R. Evid. 609(a).

admitting the conviction outweighs its prejudicial effect, district courts should examine four factors: "(1) the kind of crime involved, (2) when the conviction occurred, (3) the importance of the witness' testimony to the case, and (4) the importance of the credibility of the defendant."[48]

As an initial matter, Defendants concede that Moore's prior convictions are not admissible under Rule 609(a)(2), the Court will therefore restrict its analysis to Rule 609(a)(1). Accordingly, to be admissible the crimes must be punishable by more than one year of imprisonment.[49] While robbery is unequivocally a felony,[50] Defendants have failed to demonstrate that Moore's theft charges are felonies, since such offenses may constitute misdemeanors under Pennsylvania law.[51] Therefore, the Court will conditionally deny Defendants' motion with respect to the theft convictions and analyze only Moore's robbery conviction.

As to "the first factor—the kind of crime involved—courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime."[52] As the Third Circuit has noted, "[c]rimes of violence generally have lower probative value in weighing credibility . . . [i]n contrast, crimes that by their nature

---

[48] *United States v. Greenidge*, 495 F.3d 85, 97 (3d Cir. 2007).

[49] Fed. R. Evid. 609(a)(1).

[50] 18 Pa. Stat. and Cons. Stat. Ann. § 3701.

[51] *See* 18 Pa. Stat. and Cons. Stat. Ann. § 3903 (grading theft offenses from third-degree misdemeanors to felonies depending upon sum stolen); 18 Pa. Stat. and Cons. Stat. Ann. § 3903 (noting that third-degree misdemeanor is punishable by no more than one year of imprisonment).

[52] *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014).

imply some dishonesty, such as theft, have greater impeachment value and are significantly more likely to be admissible."[53]

With respect to Moore's robbery conviction, the Court recognizes that several courts have concluded that robbery convictions are probative of a witness' truthfulness.[54]  However, the Third Circuit in *Walker v. Horn* held that "although robbery is certainly a very serious crime, it does not involve communicative or expressive dishonesty."[55]  The Third Circuit later emphasized, in an unpublished opinion, that because "participation in [a] robbery d[oes] not involve dishonesty, it is not probative of [a witness'] character for truthfulness."[56]  These cases makes clear that, within the Third Circuit, robberies are not considered to implicate one's honesty and, thus, the first factor weighs against admitting evidence of Moore's robbery conviction.

With regard to the second factor, Moore's convictions are approximately fourteen years old,[57] which reduces their probative value.[58]  Moreover, Moore was

---

[53]  *Id.*

[54]  *See United States v. Bellinger*, No. 09-4555, 2010 WL 3364335, at *6 (E.D. Pa. Aug. 24, 2010) (collecting cases).

[55]  385 F.3d 321, 334 (3d Cir. 2004).

[56]  *United States v. Felix*, 221 F. App'x 176, 178 (3d Cir. 2007).  *See also United States v. Bibbs*, 152 F. App'x 247, 251 (3d Cir. 2005) (noting that "four recent convictions for fraud and one older drug offense . . . [are] much more probative of the credibility of the witness than the old robbery conviction (which, as a violent crime, was more likely to prejudice the jury)").

[57]  Doc. 142 at 8.

[58]  *See Caldwell*, 760 F.3d at 289 (noting that Government "failed to show that the probative value of the evidence was not diminished by the passage of more than six-and-a-half years"); *United*

released from custody in July 2017.[59]  The Third Circuit has stated that "the probative value of an older conviction may remain undiminished if the defendant was recently released from confinement or has multiple intervening convictions, both of which could suggest his character has not improved."[60]  Moore has been out of state custody for more than two and one-half years, and there is no indication on the record that he has been in any legal trouble during that time.  Given the age of the convictions and the absence of any evidence that Moore's "character has not improved,"[61] the second factor likewise weighs against admitting evidence of Moore's past convictions.

The third factor "inquires into the importance of the [witness'] testimony to his [case] at trial," as "[t]he tactical need for the [witness] to testify on his or her own behalf may militate against use of impeaching convictions."[62]  Defendants correctly note that "there is no video or direct physical evidence to corroborate or refute

---

*States v. Davis*, 524 F. App'x 835, 840 (3d Cir. 2013) (probative value of prior conviction diminished by 13-year passage of time);

[59]  *Id.*

[60]  *Caldwell*, 760 F.3d at 287.

[61]  *Id.*

[62]  *Id.*  Although *Caldwell* addressed the use of a prior conviction in the criminal context where concerns about a defendant testifying are stronger than concerns about a plaintiff testifying in his own civil action, other courts have applied the same test to civil matters.  *See, e.g.*, *Tenon v. Dreibelbis*, No. 1:12-CV-1278, 2017 WL 2734360, at *3 (M.D. Pa. June 26, 2017) ("On the third factor, the importance of the witness's testimony to the case, this factor would normally favor Plaintiff as it would appear that it is his testimony that would be necessary to establish" the elements of his claim).

Plaintiff's claims,"[63] meaning that Moore's testimony is critical to his case, and this factor thus weighs against admitting evidence of Moore's prior robbery conviction.

Finally, the fourth "factor concerns the significance of the defendant's credibility to the case. When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction."[64] This factor weighs in Defendants' favor, as Moore's credibility will play a pivotal role in the upcoming trial; given the absence of physical evidence, this matter is "[a]t its core . . . a 'he said, they said' battle between" Moore and Defendants.[65] Nevertheless, "this single factor is not enough to warrant admission of the prior convictions where all others favor exclusion."[66] Consequently, the Court will conditionally deny Defendants' motion. The Court may revisit this determination should Defendants be able to establish that, in the time since Moore's release from custody, he has behaved in a manner that may "suggest his character has not improved" by, for example, committing other crimes,[67] or that his theft convictions were felonies.[68] !

    iv.   *Evidence of Misconducts Issued by Granlund*

---

[63]  Doc. 142 at 9.

[64]  *Caldwell*, 760 F.3d at 288 (internal quotation marks omitted).

[65]  *Id.*

[66]  *Id.*

[67]  *Id.* at 287.

[68]  Notably, the first factor weighs in favor of admitting evidence of Moore's theft convictions, since such convictions "imply some dishonesty." *United States v. Santiago-Rivera*, 2017 WL 4551039 at *6 (M.D. Pa. Oct. 12, 2017) (collecting cases). *See Caldwell*, 760 F.3d at 286.

Lastly, Defendants seek to introduce evidence of misconduct reports issued by Granlund to Moore.[69] Defendants contend that such evidence is relevant to demonstrate a possible bias against Granlund, and outweighs any potential prejudice given the limited nature of the evidence that will be admitted.[70]

The admissibility of evidence is generally governed by two Rules of Evidence. Rule 402 provides that relevant evidence is generally admissible, while Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The Court agrees with Defendants that information related to grievance reports issued by Granlund to Moore is relevant inasmuch as such grievance reports may "show [Moore's] antipathy towards these particular Defendants and alert the jury to the possibility that [his] testimony against Defendants might be tainted by bias or motivated by retaliation toward the individual Defendants who authored the misconduct reports."[71]

Additionally, the fact of the misconduct reports is not unduly prejudicial. First, Defendants seek only to introduce evidence of two misconduct reports issued

---

[69] Doc. 142 at 13-14.

[70] *Id.*

[71] *Lyons v. Beard*, No. 3:07-CV-00444, 2011 WL 2446311, at *5 (M.D. Pa. June 15, 2011).

by Granlund to Moore, which mitigates some of the prejudice.  Second, Defendants will be permitted to introduce this evidence only for narrow impeachment purposes. Third, a limiting instruction will be issued, if requested.  Accordingly, the Court concludes that the prejudicial impact of the reports does not substantially outweigh their probative value, and the misconduct reports issued by Granlund to Moore will be conditionally admitted.[72]

B.     Motions to Exclude Evidence

Next, Defendants seek to exclude broad categories of evidence from introduction at trial.  As discussed below, this evidence will largely be excluded.

i.     *Evidence of Prior Discipline, Grievances, or Lawsuits*

First, Defendants seek to preclude any evidence of prior discipline, grievances, or lawsuits filed against them or any defense witnesses.[73]  Defendants argue that any such evidence "is not relevant in this case" and would be unduly prejudicial, as it may lead the jury to believe that Defendants committed the alleged acts simply because they were previously otherwise disciplined.[74]  Defendants further assert that such evidence would confuse the issues and waste time, as it would

---

[72]   The Court notes that neither party has revealed what is contained within the misconduct reports.  It is possible that the reports contain inflammatory material or language to which the jury should not be exposed.  Should Moore demonstrate that this is indeed the case, the Court will modify its ruling to permit evidence related to the fact of the misconduct reports, while excluding the reports themselves and any discussion of the underlying bases for the reports.

[73]   Doc. 142 at 14-16.

[74]   *Id.*

lead to a trial-within-a-trial.[75]  Moore generally opposes this motion, but provides no explanation for the admissibility of any underlying discipline, grievances, or lawsuits, and fails to describe the underlying bases for any grievances or discipline or how they are relevant to this action.

Without knowing the basis of any prior discipline, grievances, or lawsuits, the Court cannot determine their relevance to this case or evaluate the potential prejudice that such evidence may cause Defendants.  For example, such evidence would be more relevant if the grievances, lawsuits, or discipline were directed by Moore at Defendants, as it may provide incentive for the alleged assaults, or would be more relevant if the witnesses were disciplined for acts of dishonesty or deception.  Absent some explanation from Moore as to why this evidence is admissible, the Court must conditionally grant Defendants' motion.

---

[75]  *Id.*

ii. *Conditions of Confinement*

Defendants next seek to preclude any evidence related to Moore's conditions of confinement while confined in the RHU, with the exception of testimony related to the February 19, 2011 incident involving Perks, Hall, and Fisher.[76] Defendants contend that such evidence is irrelevant to the trial and is unduly prejudicial.

The Court agrees that any evidence related to Moore's conditions of confinement in the RHU is irrelevant to the matters remaining in this trial. Moore's remaining claims relate to discrete instances of physical or sexual assault and are wholly unconnected to Moore's conditions of confinement; the only claims in the amended complaint that implicated the conditions in the RHU were previously dismissed from this case.[77] Moreover, there is no viable allegation that Moore lost, or was unable to gather, evidence as a result of his confinement in the RHU or that any damages related to the remaining claims could emanate from his time in the RHU.[78] As such, evidence of the conditions in the RHU would not "tend[] to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence,"[79] and will be excluded as irrelevant.

---

[76] Doc. 142 at 16-17.

[77] *See* Docs. 39, 103.

[78] *Cf.* Doc. 114 at 6-7 (discussing evidence purportedly lost based on failure to investigate and dismissing such concerns).

[79] *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 85 (3d Cir. 2019).

### iii.   *Evidence of Granlund's Personal and Sexual History*

Defendants seek exclusion of any evidence related to Granlund's personal or sexual history, arguing that such information lacks probative value and is substantially prejudicial.[80]  Moore responds simply that he should be permitted to explore "Granlund's character."[81]

There is no information that would permit the Court to conclude that evidence related to Granlund's personal or sexual history is at all relevant to this matter. Notably, there has been no proffer from Moore as to what Granlund's personal or sexual history is, let alone how such history would be relevant to allegations that he committed a physical or sexual assault.  This absence is particularly notable since Moore chose not to depose Granlund; having foresworn that opportunity, Moore now seeks to engage in a line of wholly speculative questioning at trial.

Moreover, even if Moore had made a proffer, none of the information sought is relevant.  He fails to explain how Granlund's marriage, or absence thereof, is probative of whether Granlund physically or sexually assaulted Moore.  The fact that Granlund may or may not be married has absolutely no tendency "to make the existence or nonexistence of [whether he assaulted Moore] more probable than it would be without that evidence."[82]

---

[80]   Doc. 142 at 17-18.

[81]   Doc. 144 at 13.

[82]   *GN Netcom, Inc.*, 930 F.3d at 85.

Similarly, evidence of Granlund's sexual history or proclivities is entirely irrelevant and would only serve to potentially inflame the jury. Even if, for example, Moore were gay, that information does not make Moore's allegations any more likely to be true than they would be absent such information—no more than the fact of being heterosexual makes allegations that a male prison guard sexually assaulted a female prisoner any more likely. Indeed, Moore makes no argument whatsoever as to the relevance of Moore's personal or sexual history.[83] Put plainly, information that an individual is gay may—and obviously does—make it more likely that such individual engages in sexual relations with other men, but it has absolutely no bearing on whether he is disposed toward physically or sexually assaulting another man. Accordingly, Defendants' motion *in limine* will be granted in this respect, and Moore is barred from inquiring about Granlund's personal or sexual history.

### iv. *Evidence of Alleged Settlement Offer*

Next, Defendants ask the Court to exclude any evidence related to an alleged settlement offer that Moore received from an unidentified individual; Defendants contend that such evidence is inadmissible as a settlement offer under Rule 408, as hearsay, and as irrelevant.[84] Moore asserts that such evidence should be admissible

---

[83] Doc. 144 at 12-13.

[84] Doc. 142 at 18-20.

because it demonstrates that Moore began making his complaints when he had no monetary incentive to lie.[85]

Evidence of an alleged settlement offer is inadmissible for three reasons. First, Fed. R. Evid. 408 provides that—with limited exceptions not applicable here— evidence of a settlement offer or statements made during negotiations are "not admissible—on behalf of any party—. . . to prove or disprove the validity or amount of a disputed claim."[86] The Committee Notes accompanying that statute make clear that, not only is such evidence irrelevant, but it should be excluded to "promot[e] . . . public policy favoring the compromise and settlement of disputes."

Second, any testimony from Moore regarding what an unidentified individual said outside of the courtroom or a hearing would constitute inadmissible hearsay.[87] Finally, such evidence would appear to be irrelevant. Assuming that a settlement offer was in fact extended, such an offer proves nothing with regard to the claims against Defendants. Consequently, any evidence related to an alleged settlement offer is barred from admission at trial.

---

[85] Doc. 144 at 4 n.9. Notably, the offer may not even prove that Moore was uninterested in a financial settlement. An email submitted by Moore's attorney indicates that, although Moore initially turned down the alleged settlement offer, shortly thereafter he "changed his mind," indicating that perhaps he was interested in a financial settlement. (Doc. 144-2 at 4).

[86] Fed. R. Evid. 408(a).

[87] Fed. R. Evid. 801(c), 802. Moore makes no argument that such statements would be admissible under one of the exceptions to the hearsay rule. *See* Fed. R. Evid. 803, 804.

v. *Offer to Take Polygraph Examination*

Defendants also ask that this Court exclude evidence related to Moore's offer to submit to a polygraph examination.[88]  Defendants argue that the results of a polygraph examination are generally not admissible in court and, thus, the offer to take one likewise should not be admitted.[89]  Moore contends that his offer to take a polygraph examination—which was solicited by Defendants—should be admissible to demonstrate his state of mind.[90]

Courts are somewhat divided over the question of admitting evidence of an offer to take a polygraph examination.  For example, the United States Courts of Appeals for the Sixth and Eleventh Circuits have held that an offer to take a polygraph examination may be admissible to corroborate a witness' testimony after the witness' credibility is first attacked, and if the probative value of such evidence outweighs any prejudice.[91]  In contrast, absent direction from the Third Circuit, judges within this district have concluded that such evidence is not admissible.[92]

---

[88]  Doc. 142 at 20-21.

[89]  *Id.*

[90]  Doc. 144 at 12-13.

[91]  *See United States v. Neuhard*, 770 F. App'x 251, 255 (6th Cir. 2019); *Smart v. City of Miami*, 740 F. App'x 952, 966-69 (11th Cir. 2018).  *See also United States v. Hamilton*, 579 F. Supp. 2d 637, 639-42 (D.N.J. 2008).

[92]  *See, e.g., Burdyn v. Old Forge Borough*, No. 3:12-CV-2236, 2017 WL 387195, at *1-3 (M.D. Pa. Jan. 26, 2017); *United States v. Carey*, No. 4:05-CR-230, 2007 WL 9752940, at *2 (M.D. Pa. July 20, 2007).

The Court agrees with United States District Judge Robert D. Mariani's conclusion in *Burdyn v. Old Forge Borough* that Moore's offer to submit to a polygraph examination is inadmissible, as Moore "fails to demonstrate how his state of mind is relevant to the current action and the claims [pursued by] him."[93] Here, trial will proceed as to claims related to alleged physical and sexual assaults: none of the claims involve Moore's state of mind. In such circumstances, "[w]hether [Defendants'] contact, if any, with [Moore] was inappropriate and further whether it amounted to assault, battery, and/or a violation of h[is] bodily integrity is a question for the jury."[94] Furthermore, as Judge Mariani noted, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice "[g]iven the general inadmissibility of polygraph tests at trial due to the lack of reliability" and the questions that would necessarily be engendered by placing before the jury evidence only of an offer to submit to a polygraph examination.[95]

Moreover, even courts that permit evidence of an offer to submit to a polygraph examination generally hold that when "a defendant offers to take a polygraph upon the advice of, or in the presence of, counsel . . . the presence of counsel immediately calls into question the authenticity of the defendant's offer, thereby undermining its probative value."[96] This is so because counsel is presumed

---

[93]   *Burdyn*, 2017 WL 387195, at *2.

[94]   *Id.*

[95]   *Id.* at *3.

[96]   *Hamilton*, 579 F. Supp. 2d at 640.

to understand that polygraph results generally are not admissible at trial and, thus, the "offer to take a polygraph is inherently self-serving because the defendant *knows* that no adverse consequences will result from making the offer."[97] Here, the polygraph requests were directed to Moore's counsel and then passed along to Moore by his attorney.[98] This significantly reduces the probative value of Moore's offer to submit to a polygraph examination, which buttresses the conclusion that such an offer is not admissible. Accordingly, Defendants' motion to exclude evidence of Moore's offer to submit to a polygraph examination will be granted.

vi. *Evidence of Lack of Investigation*

Next, Defendants request that this Court exclude evidence of any lack of investigation into Moore's claims by prison officials, as such evidence is irrelevant and would confuse the jury by devolving into a trial-within-a-trial regarding the investigation of Moore's claims.[99] The Court agrees that evidence related to the failure to investigate Moore's complaints has no relevance to the claims pursued at trial. Simply put, any investigation—or lack thereof—has no tendency "to make the existence or nonexistence of a [the alleged assaults] more probable than it would be without that evidence."[100] Moreover, as noted previously, there is no viable allegation that any evidence was lost or not discovered as a result of the failure to

---

[97] *Id.*

[98] Doc. 144-2.

[99] Doc. 142 at 21-22.

[100] *GN Netcom, Inc.*, 930 F.3d at 85.

properly investigate Moore's allegations.[101]   Evidence related to prison officials'

failure to investigate Moore's complaints will therefore be excluded as irrelevant.

### vii.   *Moore's Written Grievances and Other Documents*

Finally, Defendants seek to preclude any evidence of Moore's prior

grievances and other self-created documents, including his personal timeline of

events.[102]   Defendants contend that such evidence is inadmissible hearsay offered

only to bolster Moore's claims.[103]   Moore in turn argues that his grievances and other

papers are admissible as prior consistent statements pursuant to Federal Rule of

Evidence 801(d)(1)(B).[104]

"Federal Rule of Evidence 801(d)(1)(B) states that a prior statement by a

witness is admissible non-hearsay when it is 'consistent with the declarant's

testimony and is offered to rebut an express or implied charge of recent fabrication

or improper influence or motive.'"[105]

> The Supreme Court has said that four requirements must be met in order
> for prior consistent statements to be admitted into evidence under Rule
> 801(d)(1)(B): (1) the declarant must testify at trial and be subject to
> cross-examination; (2) there must be an express or implied charge of
> recent fabrication or improper influence or motive of the declarant's
> testimony; (3) the proponent must offer a prior consistent statement that
> is consistent with the declarant's challenged in-court testimony; and,

---

[101]  Doc. 114 at 6-7 (discussing evidence purportedly lost based on failure to investigate and dismissing such concerns).

[102]  Doc. 142 at 22.

[103]  *Id.*

[104]  Doc. 144 at 4-9.

[105]  *United States v. Frazier*, 469 F.3d 85, 88 (3d Cir. 2006).

(4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.[106]

After examining the relevant factors, the Court concludes that it must defer any ruling on Defendants' motion. The first and third factors do not appear to be contested. As to the first factor, there is no dispute that Moore will testify at trial and will be subject to cross-examination. With regard to the third factor, it is likely that the challenged documents will be consistent with any testimony that Moore offers in court. Thus, the dispute centers around the second and fourth factors: whether there will be an implied charge of recent fabrication, and whether Moore's documents predate any motive to testify falsely.

As to the second factor, case law makes clear "that 'prior consistent statements may not be admitted to counter all forms of impeachment . . . [t]he purpose of Rule 801(d)(1)(B) is not to 'bolster the veracity of the story told,' but to rebut a charge of recent fabrication or improper influence or motive."[107] The Third Circuit "has stated that there need be only a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial."[108] As Moore correctly notes, there clearly will be an allegation at trial that Moore will testify falsely as to the events underlying his

---

[106] *Id.* (citing *Tome v. United States*, 513 U.S. 150 (1995)).

[107] *Id.* (brackets omitted) (quoting *Tome*, 513 U.S. at 158).

[108] *Id.* (internal quotation marks omitted).

remaining claims.[109]  However, there is no evidence from which the Court may conclude that Defendants will allege a "*recent* fabrication or improper influence or motive" on Moore's part.[110]  It may be that Defendants assert Moore has a recent motivation to testify falsely, or they may assert that he always possessed the same motivation; the Court simply cannot know at this time.  Similarly, with respect to the fourth factor, without knowing whether there is a charge of a recent motive to fabricate testimony, the Court cannot determine whether Moore's prior statements were "made prior to the time that the supposed motive to falsify arose."[111]  As such, the Court cannot rule on Defendants' motion *in limine* at this time, and will defer any ruling until trial.

## III.   CONCLUSION

In accordance with the above discussion, Defendants' motion *in limine* will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[109] Doc. 144 at 5-6.

[110] *Frazier*, 469 F.3d at 88.

[111] *Id.*