## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS MOORE,

        Plaintiff,

    v.

KENNY GRANLUND, *et al.*,

        Defendants.

No. 3:12-CV-00223

(Chief Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 3, 2021

For the past decade, former Pennsylvania state prisoner Thomas Moore has sought redress for civil rights violations by prison staff that he allegedly suffered while incarcerated. But over the years, the scope of Moore's civil rights claims has been narrowed considerably, with multiple counts and defendants dismissed from the suit. Now, on the eve of trial, Moore has signaled his intent to resuscitate a count this Court dismissed four years ago. That is not permissible.

The Defendants filed a motion *in limine* asking the Court to prohibit Moore from introducing at trial any testimony or evidence regarding the alleged actions of a corrections officer who is not, and never has been, a party to this action. The Defendants argue that this evidence is relevant only to the conspiracy cause of action the Court previously dismissed and has no probative value to the remaining

claims. The Court agrees. For these reasons, the Defendants' motion *in limine* is granted, subject to certain conditions discussed below.

## I.    BACKGROUND

Thomas Moore, a former Pennsylvania state prisoner, filed this civil rights complaint—which he later amended with assistance from counsel—alleging that several corrections officers violated his rights during his incarceration at State Correctional Institution Rockview ("SCI Rockview").[1] The Amended Complaint includes four causes of action: Count I, Civil Rights Violation/Retaliation against all individual Defendants; Count II, Civil Rights Violations against Defendant Marirosa Lamas for failure to establish appropriate policies, practices, or customs, and for sanctioning an alleged "cover up"; Count III, Assault and Battery against Defendant Kenny Granlund; and Count IV, False Imprisonment and Conspiracy against all Defendants.[2]

Relevant here, Moore alleges that in the latter half of 2010, he was sexually and physically abused by the Unit Manager at SCI Rockview, Defendant Granlund. Specifically, Moore asserts that during the fall of 2010, Granlund "engaged in improper sexual contact with [Moore] in Granlund's office on several occasions," and on December 6, 2010, Granlund "struck [Moore] in his mouth" and "stomped his back and other parts of his body," causing "cuts to his face and damage to his

---

[1]    Doc. 1; Doc. 28.
[2]    Doc. 28 at 7–9.

front teeth and other parts of his body."[3] Additionally, Moore alleges that three

corrections officers at SCI Rockview—Defendants Brock Perks, Edward Hall, and

Chad Fisher—"mopped cleaning fluid into [Moore's] cell when he complained of

not getting any food," causing Moore to "pass[] out and [fall] onto the concrete

floor."[4]

In July 2015, the Defendants filed a motion for summary judgment asserting,

among other things, that Moore failed to exhaust his available administrative

remedies.[5] Moore filed a cross-motion seeking partial summary judgment on the

sexual abuse claim.[6] My late colleague, the Honorable Richard P. Conaboy, then

presiding over the case, denied the parties' pending motions[7] and referred the

matter to Magistrate Judge Karoline Mehalchick for the purpose of conducting

evidentiary hearings on the exhaustion issue.[8]

Magistrate Judge Mehalchick conducted two evidentiary hearings, the first

on April 6, 2016[9] and the second on April 29, 2016.[10] During the first evidentiary

hearing, the Defendants presented Lieutenant Gregory Dyke[11] as a witness to

---

[3]   Doc. 28 ¶¶ 12, 16–22.
[4]   Doc. 28 ¶ 42.
[5]   Doc. 58 at 4.
[6]   Doc. 63.
[7]   Doc. 57; Doc. 63.
[8]   Doc. 70 at 9.
[9]   Doc. 81.
[10]  Doc. 83.
[11]  According to the Defendants, Officer Dyke was a Lieutenant at the time of the alleged chemical incident, but was promoted to Captain prior to the April 2016 evidentiary hearings. Doc. 169

discuss a grievance Moore filed regarding the alleged February 2011 chemical incident.[12] Lt. Dyke testified that Moore "voluntarily, under his own accord, withdrew" the grievance,[13] a fact seemingly corroborated by a March 21, 2011 grievance withdrawal form bearing Moore's signature.[14] In response, Moore testified that although Lt. Dyke asked him to sign the grievance withdrawal form, he declined to do so.[15] According to Moore, Lt. Dyke then said that he would "take care of it [himself]."[16] Moore accused Lt. Dyke of forging his signature on the grievance withdrawal form and wrongfully withdrawing his grievance claim.[17]

After conducting the evidentiary hearings and considering extensive post-hearing briefing and related documents, Magistrate Judge Mehalchick concluded that Moore's Amended Complaint[18] should be dismissed with prejudice for failure to exhaust the remedies available through the grievance process.[19] In September 2017, Judge Conaboy adopted Magistrate Judge Mehalchick's Report and Recommendation in part, but concluded that the Defendants "have not met their burden of showing that all of [Moore's] claims must be dismissed for failure to

---

at 2 n.1. For ease of reference, throughout this Memorandum Opinion, Officer Dyke will be referred to as "Lt. Dyke."

[12]   Doc. 81 at 51–57.

[13]   *Id*. at 56:15–22.

[14]   *See* Doc. 60–6 at 25 ("Inmate Moore elected to withdraw this grievance.").

[15]   Doc. 83 at 60:1–14.

[16]   *Id*. at 60:13–14.

[17]   *Id*. at 60:24–61:22.

[18]   Doc. 28.

[19]   Doc. 93 at 15.

exhaust administrative remedies."[20] Specifically, Judge Conaboy permitted claims

to proceed related to the following allegations:

> (1)   Defendant Granlund engaged in improper sexual contact with
>        Moore during the fall of 2010;
>
> (2)   Granlund physically assaulted Moore on December 6, 2010;
>        and
>
> (3)   Defendants Hall, Perks, and Fisher mopped chemicals into
>        Moore's cell on February 19, 2011, which resulted in Moore
>        passing out and striking his head on the ground.[21]

In so doing, Judge Conaboy dismissed Counts II (Civil Rights Violations)[22] and IV

(False Imprisonment and Conspiracy)[23] in their entirety. For Count I, Judge

Conaboy dismissed the retaliation claim as to all defendants other than Granlund[24]

and permitted the Civil Rights Violation claim to stand only as to Granlund[25] and

---

[20]   Doc. 103 at 1.

[21]   *Id*. at 64.

[22]   *See* Doc. 40 ¶ 4 ("The request for dismissal of the claims . . . against Superintendent Lamas
       solely based upon either her supervisory status or failure to respond to Moore's grievances are
       GRANTED."); *see also* Doc. 103 at 31 ("[T]o the extent Plaintiff referred to retaliation by
       Defendant Granlund or inferred supervisory liability on the part of Defendants Lamas and
       Eaton in his grievances, these claims are also properly dismissed.").

[23]   *See* Doc. 39 at 13 ("Dismissal will be granted with respect to the claim of conspiracy."),
       13–16 ("Plaintiff asserts that this period of RHU confinement constituted false imprisonment.
       . . . [T]his Court finds that the procedural due process claims set forth by Plaintiff because the
       270 day term of disciplinary custody was not of such magnitude as to implicate a protected
       liberty interest."); *see also* Doc. 40 ¶ 4 ("The request for dismissal of the claims of conspiracy
       . . . [and] placement in the RHU . . . are GRANTED.").

[24]   *See* Doc. 39 at 20 (holding that "a viable retaliation claim [against Defendants Perks, Hall, and
       Fisher] has not been stated"), 21 ("[T]here are no facts asserted which could support a claim
       that Lamas and Eaton were retaliating against the Plaintiff for engaging in constitutionally
       protected activity."); *see also* Doc. 40 ¶ 4 ("The request for dismissal of the claims of . . .
       retaliation (with the exception of the claims against Granlund) . . . are GRANTED.").

[25]   *See* Doc. 40 ¶ 5 ("The following federal claims will proceed: (1) all allegations against
       Defendant Granlund . . . .").

Hall, Perks, and Fisher.[26] Count III (Assault and Battery), which named only Granlund as a defendant, likewise remains.[27]

Following Judge Conaboy's September 2017 ruling, the parties filed cross motions for summary judgment.[28] In September 2018, Judge Conaboy denied both motions.[29] The parties then filed motions for reconsideration.[30] Judge Conaboy died in November 2018 and this matter was administratively reassigned to the undersigned. On June 18, 2019, this Court denied the parties' motions for reconsideration.[31]

After efforts at settlement failed, the Court issued a scheduling order on May 14, 2021, setting a date for trial and requiring the parties to file all motions *in limine* by September 3, 2021.[32] Consistent with the Court's scheduling order, the

---

[26] *See* 39 at 20 n.12 ("The allegations against Defendants Perks, Fisher, and Hall with respect to their alleged conduct on February 19, 2011 will be allowed to proceed to the extent that they assert a claim of being exposed to unconstitutional conditions of confinement."); *see also* Doc. 103 at 62 ("Plaintiff's claims regarding the February 19, 2011, chemical incident may proceed against Defendants Hall, Perks, and Fisher.").

[27] *See* Doc. 39 at 22 ("A decision as to whether this Court should exercise jurisdiction over any state law tort claims against the Defendants will be held in abeyance pending resolution of all dispositive motions."); Doc. 103 at 49 ("Defendants have not met their burden of showing that Plaintiff's allegation of physical abuse by Defendant Granlund on September 6, 2010, must be dismissed for failure to exhaust administrative remedies pursuant to [the Prison Litigation Reform Act]. Therefore, this claim properly goes forward."), 55 ("Plaintiff's claim of sexual abuse by Defendant Granlund goes forward.").

[28] Doc. 105; Doc. 106.

[29] Doc. 114; Doc. 115.

[30] Doc. 117; Doc. 120.

[31] Doc. 127; Doc. 128.

[32] Doc. 165.

Defendants filed the instant motion on September 3, 2021.[33] The motion has been fully briefed[34] and is now ripe for disposition.

## II.    ANALYSIS

In their motion *in limine*, the Defendants ask the Court to "preclude [Moore] from presenting any evidence, questions, testimony, statements or arguments regarding his claim that non-defendant Lt. Dyke allegedly forged [Moore's] signature and wrongfully withdrew [Moore's] grievance regarding the chemical assault in order to cover for one of the Defendants."[35] Specifically, the Defendants argue that even if Moore's allegations about Lt. Dyke were true (a fact the Defendants' ardently contest), evidence on this issue would be irrelevant because it would not "make it more probable that [Officers Perks, Hall, and Fisher] placed chemical fluids in [Moore's] cell causing a fall and injury."[36] The Defendants further assert that whatever probative value this evidence does have "is substantially outweighed by danger of prejudice" because it "may cause the jury to believe [Moore's] allegations of chemical assault merely because of [Lt.] Dyke's alleged actions" and would inevitably result "in a mini-trial as to whether or not the accusation against [Lt.] Dyke is true."[37]

---

[33]   Doc. 166.
[34]   *See* Doc. 167; Doc. 168; Doc. 169.
[35]   Doc. 167 at 2.
[36]   *Id*. at 4.
[37]   *Id*.

Moore counters that evidence of Lt. Dyke allegedly forging Moore's signature and improperly withdrawing Moore's grievance claim is relevant and admissible for two reasons. First, Moore argues that this constitutes "other acts" evidence admissible under Rule 404(b)(2) because it demonstrates that the Defendants' actions were "part of a 'common scheme'" designed "to 'motivate' [Moore] not to pursue his claims."[38] Second, Moore contends that this evidence "is clearly relevant to his credibility"—a position that the Defendants took at the April 29, 2016 evidentiary hearing before Magistrate Judge Mehalchick.[39]

The Court finds both of Moore's theories of admissibility unpersuasive and thus grants the Defendants' motion *in limine*, subject to certain conditions.

### A.    Rule 404

Federal Rule of Evidence 404(b)(1) stipulates that "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[40] Section (b)(2) of that Rule provides that such evidence may however be admissible for another purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[41] The Third Circuit follows a four-part test to determine the admissibility of

---

[38]   Doc. 168 at 6 n.6.
[39]   *Id*. at 6–13.
[40]   Fed. R. Evid. 404(a).
[41]   Fed. R. Evid. 404(b).

evidence under Rule 404(b): "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted."[42]

Here, Moore argues that testimony and other evidence regarding Lt. Dyke's allegedly improper withdrawal of Moore's grievance claim will be offered as proof of "a concerted 'plan' or scheme'"—a proper, non-propensity purpose under Rule 404(b).[43] Accordingly, under the four-part test recognized by the Third Circuit, this Court must determine whether this "other act" evidence—which concerns the actions of a separate corrections officer who is not, and never has been, a defendant in this case—is relevant to prove a key issue in this case. If yes, the Court must then decide whether admission comports with the balancing test of Federal Rule of Evidence 403.

The Third Circuit has held that "ordinarily, when courts speak of 'common plan or scheme,' they are referring to a situation in which the charged and uncharged crimes are parts of a single series of events."[44] It is therefore unsurprising that "other act" evidence offered to demonstrate the existence of a

---

[42] *United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006).
[43] Doc. 168 at 6 n.6.
[44] *United States v. Smith*, 725 F.3d 340, 346 (3d Cir. 2013).

common plan generally concerns separate acts *by the defendant*.[45] To the extent

legal commentators have intimated that admissible "other act" evidence can

concern actions taken by non-parties, they do so only regarding co-conspirators

that "explicitly" agreed to carry out this conduct as "an integral part of an over-

arching plan."[46]

Although Lt. Dyke is the corrections officer at SCI Rockview who reviewed

Moore's grievance regarding the February 2011 chemical incident,[47] there is no

indication that Lt. Dyke was involved in this or any other event relevant to the

claims in this case. Indeed, Lt. Dyke is conspicuously absent from the Amended

Complaint—Moore references twelve different corrections officers and other

prison officials by name, but Lt. Dyke is not among them.[48] Nevertheless, Moore

---

[45] *See Martinellia v. Penn Millers Insurance Co.*, 2007 WL 9759057, at *7 (M.D. Pa. 2007) (Vanaskie, J.) ("[E]vidence of a defendant's other acts to establish a 'plan' refers to situations where 'both acts are part of a common or continuing scheme; the plan must encompass or include both acts; the acts must be connected, mutually dependent, and interlocking.'") (quoting *Becker v. ARCO Chemical Co.*, 207 F.3d 175, 197 (3d Cir. 2000); *see also* 1 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 3:22, at 117 (West 1999) ("In a true plan case, the courts hold that the prosecutor may prove any unchanged crime by the defendant which shows that the defendant in fact and in mind formed a plan including [the prior act] and the charged [act] as stages in the plan's execution."); 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5244, at 499–500 (West 1978) ("The justification for admitting evidence of other crimes to prove a plan is that this involves no inference as to the defendant's character; instead, his conduct is said to be caused by his conscious commitment to a course of conduct of which the charged crime is only a part.").

[46] 1 Robert P. Mosteller, ed., *McCormick* on Evidence § 190.2 (8th ed.) ("Although some courts construe "common plan" more broadly (especially in sexual abuse and domestic violence cases), each crime should be an integral part of an over-arching plan explicitly conceived and executed by the defendant or his confederates.").

[47] Doc. 167 at 3.

[48] *See* Doc. 28.

insists that Lt. Dyke's actions are further evidence of a coordinated "'plan' or 'scheme' to cover up Granlund's allegedly criminal sexual behavior and, instead, thwart and punish [Moore] for all his efforts at seeking redress."[49] This argument fails for two principal reasons.

First, on February 7, 2014, Judge Conaboy issued an order dismissing, among other claims, Count IV of the Amended Complaint: False Imprisonment and Conspiracy.[50] In his accompanying memorandum opinion, Judge Conaboy explained why the conspiracy claim could not proceed:

> There are no averments of fact in the Amended Complaint that reasonably suggest the presence of an agreement or concerted activity between the Defendants. Moore has simply not alleged any facts showing any communication or cooperation among any Defendants from which an agreement could be inferred. While [Moore] has set forth some claims of constitutional misconduct, he has not adequately alleged that those actions were the result of a conspiracy."[51]

Moore now argues that in claiming that the defendants' actions were part of a "cover-up plan," he is not "attempt[ing] to prove a 'conspiracy' here among the remaining defendants"; rather, he intends to prove that these actions constituted "parallel conduct, which may or may not be premised on an agreement."[52] This argument has no merit.

---

[49]   Doc. 168 at 6.
[50]   Doc. 40 ¶ 4.
[51]   Doc. 39 at 12–13.
[52]   Doc. 168 at 6 n.6 (internal quotation marks omitted).

Throughout his opposition brief, Moore describes the Defendants as "the chief culprits in the cover-up," acting together as part of a "common plan[,] scheme or design."[53] Moore is not claiming that the events alleged in the Amended Complaint—as well as the actions of Lt. Dyke at issue in the motion under consideration—are "merely parallel conduct that could just as well be independent action[s]";[54] he explicitly argues the opposite, asserting that these actions "can *only* be understood" as part of a "common scheme."[55] Because Moore's conspiracy claim has been dismissed, any evidence that Moore intends to introduce solely to establish the conspiracy is irrelevant and therefore inadmissible.[56]

Second, even were the Court to consider evidence of conspiracy relevant to a key issue in the case, Moore has failed to articulate how Lt. Dyke's alleged actions relate to the alleged conspiracy.[57] In his opposition brief, Moore is specific about the purpose of the alleged conspiracy: "to cover up *Granlund's* allegedly criminal sexual behavior and, instead, thwart and punish [Moore] for all of his efforts at

---

[53] *See*, *e.g.*, *id*. at 4 n.4, 5–7, 6 n.6.

[54] *Campbell v. Balon*, 2017 WL 4680668, at *1 (M.D. Pa. Oct. 18, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).

[55] Doc. 168 at 6, 6 n.6 (emphasis in original).

[56] *See Rodriguez v. Thomas*, 2018 WL 3141556, at *4 (M.D. Pa. June 27, 2018) (Rambo, J.) ("[T]he court finds that the evidence regarding the claims previously dismissed in this case are irrelevant to the issues on trial.").

[57] Although Moore does not provide any explanation on this point, the Defendants note that Moore "will contend one of the [three] accused Officers/Defendants in the chemical incident claim was going through a hard time in life and that [Lt.] Dyke tried to help him out by sabotaging the grievance against him." Doc. 167 at 3.

seeking redress."[58] But the grievance assigned to Lt. Dyke did not concern any actions by Granlund; it instead pertained to the February 2011 chemical incident, where Officers Perks, Fisher, and Hall allegedly "mopped cleaning fluid into [Moore's] cell."[59] Presumably, it is Moore's position that Lt. Dyke sabotaged the grievance to protect Officers Parks, Fisher, and Hall, who in turn mopped chemical fluids into Moore's cell to punish him and protect Granlund. This "chain of logical inferences" to establish relevancy is, to put it mildly, highly attenuated.[60]

Conversely, the danger of this evidence confusing the issues and misleading the jury is high. As noted, the Defendants vehemently deny Moore's accusations that Lt. Dyke forged Moore's signature and wrongfully withdrew his grievance regarding the chemical incident: "There is no evidence of forgery. There is no conviction for perjury. All that exists is [Moore's] unsupported allegations."[61] As such, the Defendants are correct that admitting this evidence would inevitably "result in a mini-trial as to whether or not the accusation against [Lt.] Dyke is

---

[58]   Doc. 168 at 6 (emphasis added); *see also id.* at 4 n.5 (describing the scheme as intended "to cover-up the allegations to protect Granlund in the case").

[59]   Doc. 28 ¶ 42; *see also* Doc. 103 at 55–62 (describing the February 2011 abuse allegations and the related grievance (No. 355976) that was assigned to Lt. Dyke).

[60]   *Becker*, 207 F.3d at 191.

[61]   Doc. 169 at 3; *see also* Doc. 96 at 15 ("This claim is outrageous and further demonstrates [Moore's] lack of credibility. There is no reason for [Lt.] Dyke to risk discipline with a forgery and risk termination or prosecution by committing perjury.").

true."[62] Such a "trial within a trial" would "not only consume a great deal of time but would distract the jury from the pertinent issues in this case."[63]

Therefore, the testimony and other evidence concerning non-party Lt. Dyke's actions is not admissible as "other acts" evidence under Rule 404 because it is relevant only to a dismissed claim, and whatever other probative value it may have is substantially outweighed by the risk of confusing the issues and misleading the jury.

## B. Credibility

Alternatively, Moore argues that evidence of Lt. Dyke's alleged wrongful withdrawal of Moore's grievance is admissible under Federal Rules of Evidence 401 and 402 as it is relevant to Moore's credibility.[64] The Defendants dispute the assertion that this evidence in any way *bolsters* Moore's credibility, and reiterate that the evidence is nevertheless inadmissible under Rule 403.[65] Again, the Court agrees with the Defendants.[66]

---

[62]   Doc. 167 at 4.

[63]   *United States v. DeWald*, 2019 WL 5310297, at *7 (M.D. Pa. Oct. 21, 2019).

[64]   Doc. 168 at 10.

[65]   Doc. 169 at 3–4.

[66]   Moore argues that as a matter of equity, the Defendants should be "estopped" from challenging the admissibility of this evidence because they "opened the door" on this issue and "injected it into the case." Doc. 168 at 10–11. In Moore's opinion, the Defendants' "'hands' are unclean here by any criteria"; they "cannot claim the evidence essential to evaluate [Moore's] credibility in one instance" and then argue that it "is inadmissible for the same purpose in another (the instant) instance." *Id.* This argument has no merit. The Defendants' position about the veracity of Lt. Dyke's testimony and Moore's allegations remains unchanged; they are not "aver[ring] a different or contrary state of facts as existing at the same time." *In re Tallarico's Estate*, 228 A.2d 736, 741 (Pa. 1967). The Defendants' response at the evidentiary hearing to Moore's accusation that Lt. Dyke forged Moore's signature and perjured himself—

14

Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[67] As a general matter, the Third Circuit has held that "evidence concerning a witness's credibility is always relevant, because credibility is always at issue."[68] However, simply claiming that certain evidence "go[es] directly to Plaintiff's credibility" does not, by itself, establish relevance—the moving party must make a showing sufficient to establish that proffered evidence will meaningfully aid the jury's credibility determination.[69]

Under Rule 402, "[i]rrelevant evidence is inadmissible."[70] Conversely, "[r]elevant evidence is admissible" unless the United State Constitution, a federal statute, the federal rules of evidence, or other rules prescribed by the Supreme Court explicitly provide otherwise.[71] One such restriction on the admissibility of relevant evidence is Rule 403: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

---

specifically, that "this claim is outrageous and further demonstrates [Moore's] lack of credibility," Doc. 96 at 15—does not necessitate the admission at trial of otherwise inadmissible evidence.

[67] Fed. R. Evid. 401.

[68] *United States v. Green*, 617 F.3d 233, 251 (3d Cir. 2010).

[69] *See Shelton v. Bledsoe*, 2017 WL 2906560, at *6 (M.D. Pa. July 7, 2017) (Mannion, J.) (rejecting defendant's argument that evidence of plaintiff's other lawsuits are relevant and admissible because they "go directly to Plaintiff's credibility").

[70] Fed. R. Evid. 402.

[71] *Id.*

presenting cumulative evidence."[72] Accordingly, evidence offered for the purpose

of "permit[ting] the jury to assess [a party's] credibility" is inadmissible if the

court determines that the danger of unfair prejudice, confusing the issues, or any

other Rule 403 concern substantially outweighs the evidence's probative value.[73]

Notably, "[a] trial court is afforded substantial discretion when striking a Rule 403

balance with respect to proffered evidence."[74]

　　　　Here, it is unclear how evidence of Lt. Dyke's alleged actions helps

"establish [Moore's] credibility with the jury."[75] Based on the Court's review of

the exhaustion hearing transcripts,[76] it appears that the Defendants accurately

presented how this evidence was first introduced and addressed:

> [T]he withdraw and [Lt.] Dyke were presented in support of the
> argument that [Moore] did not exhaust his claim. When
> [Moore] responded with forgery and perjury allegations, the
> argument was made [that] this claim is yet another piece of
> evidence to show how incredible [Moore] is."[77]

As Moore notes, Judge Conaboy did not find the Defendants' incredulity at

Moore's forgery allegations sufficient to establish that Moore failed to exhaust the

---

[72]　Fed. R. Evid. 403.

[73]　*Donahue v. City of Hazleton*, 2021 WL 4810699, at *2–3 (M.D. Pa. Oct. 14, 2021) (Mannion, J.).

[74]　*Rodriguez*, 2018 WL 3141556, at *3 (citing *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009)).

[75]　Doc. 168 at 12.

[76]　*See* Doc. 81; Doc. 83.

[77]　Doc. 169 at 3.

remedies available to him through the grievance process;[78] however, that does not help explain how this evidence bolsters Moore's credibility.

Presumably, Moore believes that if he presents this evidence and convinces the jury that Lt. Dyke, in fact, forged his signature and wrongfully withdrew his grievance, the jury will find Moore more credible. The connection between the evidence at issue and the conclusion Moore hopes the jury will draw is far too attenuated to establish relevance under Rule 401. Moreover, as discussed, this does not pass muster under Rule 403. For this evidence to even be considered for the purpose Moore asserts (i.e., credibility), the Court would effectively need to conduct a trial within a trial to determine whether Moore's allegations have merit—a result that would "not only consume a great deal of time but would distract the jury from the pertinent issues in this case."[79] Even if Moore convinced the jury that Lt. Dyke engaged in this wrongful conduct, the Court considers it unlikely that the primary effect would be enhancing Moore's credibility. The Court instead agrees with the Defendants that this evidence "may cause the jury to believe [Moore's] allegations of chemical assault merely because of [Lt.] Dyke's alleged actions"—a serious "danger of prejudice."[80]

---

[78] *See* Doc. 169 at 10 (citing Doc. 103 at 55–60).
[79] *DeWald*, 2019 WL WL 5310297, at *7.
[80] Doc. 167 at 4.

To the extent the evidence concerning Lt. Dyke's alleged actions bears on Moore's credibility, it does so in only a very limited, convoluted way; it is in no way the "only weapon[]" to establish credibility at Moore's disposal.[81] And the risk that this evidence, if admitted, would confuse the issues, distract the jury, and prejudice the Defendants is high. Indeed, the Court thinks this result is all but certain. As such, this evidence, if offered to bolster Moore's credibility, is inadmissible under Rules 402 and 403.[82]

## C.    Other Considerations

Although the Court finds Moore's stated theories of admissibility for the Lt. Dyke evidence—that is, as evidence of a "common plan or scheme" under Rule 404(b) or as relevant to Moore's credibility under Rules 401 and 402—unpersuasive, it is not difficult to envision a scenario in which this evidence may become highly relevant to a vital issue in the case. Specifically, in response to

---

[81]   Doc. 168 at 12.

[82]   The Third Circuit has admonished District Courts that "*pretrial* Rule 403 exclusions should rarely be granted," explaining that "a court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original). However, the Third Circuit recognizes that exclusion of evidence under Rule 403 may be appropriate where the District Court has "a record complete enough on the point at issue to be considered a virtual surrogate for a trial record." *Id*. at 859–60. Here, the record is sufficiently complete to justify a pretrial ruling. As noted, Magistrate Judge Mehalchick held multiple evidentiary hearings in this case to analyze whether Moore properly exhausted the remedies available to him through the grievance process. Doc. 81; Doc. 83. During these hearings, Defendants presented Lt. Dyke as a witness and Moore confronted Lt. Dyke with the allegations of wrongful conduct. *Id*. This testimony, when considered alongside the parties' briefing on the relevant evidentiary issues, provides the Court an adequate basis for "fairly ascertain[ing] the potential relevance" of the evidence at issue. *In re Paoli*, 916 F.2d at 859.

Moore's claims regarding the February 2011 chemical incident, the Defendants may feel inclined to present evidence or argument about Moore's decision to voluntarily withdraw the grievance he filed about this event. The Court, obviously, takes no position on the merits of this decision—that is a matter of trial strategy left to the Defendants and their attorneys. But if the Defendants make this argument, they may well "open the door" to the question of whether Lt. Dyke forged Moore's signature and wrongfully withdrew Moore's grievance without Moore's consent. The Court would then be required to reevaluate the relevance and admissibility of this evidence.

## III.  CONCLUSION

Evidence of alleged wrongdoing by non-party Lt. Dyke that is not relevant to any of the remaining claims in this case is not admissible under Rule 404. Further, Rules 401 and 402 offer no basis for admissibility because this evidence has little to no bearing on Moore's credibility and a high likelihood of confusing the issues, misleading the jury, and unduly prejudicing the Defendants. Because these risks substantially outweigh the evidence's probative value, the evidence (if offered to bolster Moore's credibility) is inadmissible under Rule 403.

That said, the Court is not prepared to categorically bar Moore from introducing this evidence regardless of what arguments the Defendants make at trial. If, in response to Moore's claims related to the February 2011 incident, the

Defendants raise the issue of Moore's allegedly voluntary withdrawal of his grievance claim, the Court will be required to reconsider the relevance and admissibility of the evidence concerning Lt. Dyke.

Subject to this condition, the Defendants' motion *in limine* is granted.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge