## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS MOORE,

          Plaintiff,

    v.

KENNY GRANLUND, *et al.*,

          Defendants.

No. 3:12-CV-00223

(Chief Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 18, 2021

Initiated in February 2012, former inmate Thomas Moore's civil rights lawsuit against several corrections officers is set to go to trial in eleven days. Although Moore's lawsuit initially alleged a sweeping, prison-wide conspiracy involving nearly a dozen separate prison officials, the scope of the lawsuit has been considerably narrowed. Now, all that remains are two counts concerning three discrete incidents involving four defendants. Nevertheless, Moore persists in his effort to litigate this as a conspiracy case. That is not permissible.

With his presentence memorandum, Moore filed two motions *in limine* (which he labeled "Legal Memoranda") asking the Court to deem admissible evidence relevant only to the dismissed conspiracy charge. These motions are both untimely and without merit. As such, Moore's motions *in limine* are denied.

# I.    BACKGROUND

Thomas Moore, a former Pennsylvania state prisoner, filed this civil rights complaint—which he later amended with assistance from counsel—alleging that several corrections officers violated his rights during his incarceration at State Correctional Institution Rockview ("SCI Rockview").[1] The Amended Complaint includes four causes of action: Count I, Civil Rights Violation/Retaliation against all individual Defendants; Count II, Civil Rights Violations against Defendant Marirosa Lamas for failure to establish appropriate policies, practices, or customs, and for sanctioning an alleged "cover up"; Count III, Assault and Battery against Defendant Kenny Granlund; and Count IV, False Imprisonment and Conspiracy against all Defendants.[2]

In a series of successive rulings starting in 2014, the Court narrowed the scope of the lawsuit by dismissing certain counts and defendants from the case. On February 7, 2014, the Court granted in part the Defendants' motion for partial dismissal.[3] Relevant here, the Court granted "[t]he request for dismissal of the claim[] of conspiracy,"[4] explaining that "[t]here are no averments of fact in the Amended Complaint that reasonably suggest the presence of an agreement or concerted activity between the Defendants," and, thus, Moore "has not adequately

---

[1]    Doc. 1; Doc. 28.
[2]    Doc. 28 at 7–9.
[3]    Doc. 39; Doc. 40.
[4]    Doc. 40 ¶ 4.

alleged that [the incidents of constitutional misconduct] were the result of a conspiracy."[5]

On September 21, 2017, the Court adopted in part Magistrate Judge Karoline Mehalchick's Report and Recommendation that Moore's Amended Complaint should be dismissed with prejudice for failure to exhaust the remedies available through the grievance process.[6] The Court ruled that only claims related to the following allegations were permitted to proceed:

(1) Defendant Granlund engaged in improper sexual contact with Moore during the fall of 2010;

(2) Granlund physically assaulted Moore on December 6, 2010; and

(3) Defendants Edward Hall, Brock Perks, and Chad Fisher mopped chemicals into Moore's cell on February 19, 2011, which resulted in Moore passing out and striking his head on the ground.[7]

The Court affirmed this ruling on September 26, 2018,[8] and again on June 18, 2019.[9]

On March 18, 2020, the Court ruled on certain evidentiary motions filed by the Defendants.[10] Relevant here, the Court granted the Defendant's motion "to exclude any evidence related to an alleged settlement offer that Moore received from an unidentified individual."[11] The Court explained that this evidence "is

---

[5]   Doc. 39 at 12–13.
[6]   Doc. 103; Doc. 104.
[7]   Doc. 103 at 64.
[8]   Doc. 114; Doc. 115.
[9]   Doc. 127; Doc. 128.
[10]  Doc. 146; Doc. 147.
[11]  Doc. 146 at 20.

inadmissible for three reasons": (1) "Fed. R. Evid. 408 provides that—with limited exceptions not applicable here—evidence of a settlement offer or statements made during negotiations are not admissible . . . to prove or disprove the validity or amount of a disputed claim"; (2) "any testimony from Moore regarding what an unidentified individual said outside of the courtroom or a hearing would constitute inadmissible hearsay"; and (3) "such evidence would appear to be irrelevant" because "[a]ssuming that a settlement offer was in fact extended, such an offer proves nothing with regard to the claims against [the] Defendants."[12]

After efforts at settlement failed, the Court issued a scheduling order on May 14, 2021, setting a date for trial and requiring the parties to file all motions *in limine* by September 3, 2021.[13] Consistent with the Court's scheduling order, on September 3, 2021, the Defendants filed a motion *in limine* to prohibit Moore from introducing at trial any testimony or evidence regarding the alleged actions of a corrections officer who is not, and never has been, a party to the case.[14] The Defendants argued that the evidence was relevant only to the conspiracy cause of action the Court previously dismissed and has no probative value to the remaining claims.[15]

---

[12]   *Id*. at 21 (internal quotation marks omitted).
[13]   Doc. 165.
[14]   Doc. 166.
[15]   *Id*.

On November 3, 2021, the Court granted the Defendants' motion *in limine*.[16] The Court explained that the evidence was not admissible under Rule 404 because (a) it was relevant only the Moore's conspiracy claim, which has been dismissed; and (b) "even were the Court to consider evidence of conspiracy relevant to a key issue in the case," whatever "probative value it may have is substantially outweighed by the risk of confusing the issues and misleading the jury."[17] Further, the Court held that "Rules 401 and 402 offer no basis for admissibility because this evidence has little to no bearing on Moore's credibility and a high likelihood of confusing the issues, misleading the jury, and unduly prejudicing the Defendants."[18]

Two days later, on November 5, 2021, Moore filed his pretrial memorandum,[19] which included two attachments labeled "Legal Memorandum."[20] In the first "Legal Memorandum," Moore asks the Court to "admit his testimony and his contemporaneously created documentary evidence to prove other and others' acts in this case to [help] the jury understand the context and setting of the claims against all remaining defendants."[21] In the second, Moore asks the Court to

---

[16]   Doc. 174; Doc. 175.
[17]   Doc. 174 at 12, 14.
[18]   *Id*. at 19.
[19]   Doc. 181.
[20]   Doc. 181-4; Doc. 181-6.
[21]   Doc. 181-4 at 8 (internal quotation marks omitted).

"reconsider its Order of March 18, 2020 insofar as it 'conditionally barred' [him] from presenting evidence of . . . an alleged settlement offer."[22]

During the November 9, 2021 pretrial conference, Moore's attorney insisted that these "Legal Memoranda" were not motions *in limine*.[23] Regardless, because these filings request rulings on the admissibility of evidence prior to trial, the Court believes it necessary to address the filings at this juncture.

## II.   ANALYSIS

### A.   Motions *in Limine*

As a preliminary matter, the Court must first determine how to construe Moore's "Legal Memoranda." At the pretrial conference, Moore's counsel strongly denied that these filings were motions *in limine*, presumably because he recognized that the deadline for motions *in limine* was September 3, 2021[24]—two months before Moore filed the "memoranda." But as these filings explicitly request a ruling on the admissibility of certain evidence, they constitute motions *in limine*. And, as such, they are untimely.

A motion *in limine* "is a device for obtaining rulings on the admissibility of evidence prior to trial."[25] Typically, motions *in limine* are made "for the purpose of

---

[22] Doc. 181-6 at 7.
[23] Doc. 182.
[24] *See* Doc. 165.
[25] *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 667 (Pa. Super. 2007) (citing Packel and Poulin, Pennsylvania Evidence, § 103.3 at 12) (internal quotation marks omitted).

6

prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[26] However, parties can also file motions *in limine* to admit certain evidence, thereby clarifying in advance of trial the universe of admissible material and the scope of permissible topics and lines of inquiry.[27] When analyzing whether a filing constitutes a motion *in limine*, courts consider the substance of the request; courts are not bound by the form of the filing.[28]

Here, Moore's first "Legal Memorandum" asks the Court to "admit his testimony and his contemporaneously created documentary evidence to prove 'other [acts]'"[29]—distinct from, and not directly related to, the three incidents at issue in the trial—by "others, not now part of the case."[30] In the second

---

[26]   *United States v. Davis*, 208 F. Supp. 3d 628, 632 (M.D. Pa. 2016) (citing *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 (5th Cir. 1977)).

[27]   *See*, *e.g.*, *United States v. Singleton*, 458 F. App'x. 169, 171–73 (3d Cir. 2012) (holding that the District Court "did not abuse its discretion" in granting the government's "pre-trial motion *in limine* to admit certain evidence of other crimes, wrongs, or acts pursuant to Federal Rule of Evidence 404(b)"); *Tourtellote v. Eli Lilly and Co.*, 636 F. App'x. 831, 854–55 (3d Cir. 2016) (holding that the District Court did not abuse its discretion in denying plaintiff's motion *in limine* "to include evidence of [the defendant's] conduct towards other employees").

[28]   *See Northwest Savings Bank and Financial Services v. NS First Street LLC*, 2011 WL 6180874, at *5 (M.D. Pa. Dec. 13, 2011) (Kane, J.) (holding that a "trial memorandum" filed by defendants "nine days before trial" was "properly construed as a motion *in limine*" as it was "devoted exclusively to a challenge to the testimony of Plaintiff's expert").

[29]   Doc. 181-4 at 8.

[30]   *Id*. at 2. Specifically, Moore references two individuals previously dismissed as defendants in the case (Marirosa Lamas and Lynn Eaton), a corrections officer who testified at the evidentiary hearing held by Magistrate Judge Mehalchick but who was never a named

7

"Memorandum," Moore asks the Court to "reconsider" its March 18, 2020 ruling that any evidence related to an alleged settlement offer is barred from admission at trial.[31] Because the filings seek "rulings on the admissibility of evidence prior to trial,"[32] both constitute motions *in limine*; Moore's arguments to the contrary are belied by the substance of the filings.[33]

As Moore filed these motions *in limine* two months after the Court-ordered deadline, the motions are untimely.[34] The Court need not consider untimely motions *in limine*, particularly where, as here, the movant "offer[s] no explanation for the delay" and never requested "an extension of time to file a motion *in limine*."[35] Nevertheless, the Court will address the merits of Moore's motions to provide clarity on what evidence the parties may introduce and the lines of inquiry they may explore at trial.

### B.    Rule 404

In his first motion *in limine*, Moore asks the Court to "admit his testimony and his contemporaneously created documentary evidence to prove other and others' acts in this case to [help] the jury understand the context and setting of the

---

defendant (Gregory Dyke), and "others who worked at SCI Rockview who were never part of the case." *Id*.

[31]   Doc. 181-6 at 7.

[32]   *Northeast Fence*, 933 A.2d at 667.

[33]   *See Northwest Savings*, 2011 WL 6180874 at *5.

[34]   *See* Doc. 165.

[35]   *Northwest Savings*, 2011 WL 6180874 at *5 ("Because the deadline for motions *in limine* passed over a month before Defendants filed their motion, the Court will strike the memorandum as an untimely motion *in limine*.").

claims against all remaining defendants."[36] Moore asserts that "[t]his case has always been about [his] futile attempts to obtain an investigation and redress for his allegations of criminal sexual abuse," and that the "other acts" evidence is necessary "to prove that there was a 'core cover-up conspiracy.'"[37] But this argument is flatly contradicted by this Court's prior rulings.

First, the Court's February 7, 2014 ruling dismissed Moore's conspiracy claim, explaining that "[t]here are no averments of fact in the Amended Complaint that reasonably suggest the presence of an agreement or concerted activity between the Defendants," and, as such, Moore "has not adequately alleged that [the instances of constitutional misconduct] were the result of a conspiracy."[38] The Court's September 21, 2017 decision further narrowed the scope of the case, explaining that only three events remain at issue: Moore's "claims of sexual abuse by Defendant Granlund in the fall of 2010, physical abuse by Defendant Granlund on December 6, 2010, and physical abuse by Defendants Hall, Perks, and Fisher on February 19, 2011."[39] All other claims were "dismissed with prejudice."[40]

Given these rulings, it is unclear why Moore still believes this is principally a "cover-up conspiracy" case regarding a "wide reaching 'plan' at the prison" to prevent Moore from "obtain[ing] an investigation and redress for his allegations of

---

[36] Doc. 181-4 at 8 (internal quotation marks omitted).
[37] *Id*. at 1, 6.
[38] Doc. 39 at 12–13.
[39] Doc. 103 at 64.
[40] *Id*.

criminal and sexual abuse."[41] It is not. As this Court has made clear, time and again, the issues that remain are discrete—specifically, the jury must determine whether Granlund sexually and physically abused Moore in 2010, and whether, in February 2011, Hall, Perks, and Fisher mopped chemicals into Moore's cell, causing him to injure his head.[42] That's it.[43] The Court will not permit Moore to resuscitate at trial claims it dismissed several years ago.

---

[41]  Doc. 181-4 at 1–2, 6.

[42]  *See* Doc. 127; Doc. 146; Doc. 174.

[43]  At various points during the November 9, 2021 pretrial conference, Moore's attorney represented that the Honorable Richard P. Conaboy, my late colleague who previously presided over this case, ruled that certain prison officials prevented any criminal or administrative investigation into Moore's initial grievance claims about Granlund's alleged sexual abuse, and that evidence of such efforts to stymie an investigation are relevant to the remaining claims. *See* Doc. 181-4 at 1 ("The original defendants were present defendants and the pertinent administrators at the prison, sued for their roles in a plan that successfully thwarted any investigation, as held by Judge Conaboy in his various opinions."). In his first motion *in limine*, Moore claims that this constitutes the "law of the case." *Id.* That is not true. In his September 21, 2017 ruling, Judge Conaboy addressed the Defendants' motion for summary judgment based on Moore's purported "fail[ure] to exhaust his available administrative remedies." Doc. 103 at 4. Judge Conaboy held that Defendants "satisfied their burden of showing that [Moore] did not exhaust his claims through DC-ADM 804 regarding any claim for which he received an Initial Review Response indicating that the grievance was rejected or denied at the initial level." *Id.* at 30. As such, Judge Conaboy ruled that Moore's "conditions of confinements claims" and claims of "inferred supervisory liability on the part of Defendants Lamas and Eaton" are "properly dismissed." *Id.* However, Judge Conaboy explained that "this conclusion does not apply to grievances for which [Moore] did not receive a denial upon initial review"—that is, Moore's grievances regarding the alleged sexual and physical abuse by Granlund and the chemical incident involving Hall, Perks, and Fisher. *Id.* Judge Conaboy ruled that because Moore was not able to fully pursue his administrative remedies as to these grievances, the related claims "go forward." *Id.* at 31–64. Contrary to Moore's belief, this ruling did not establish that the case was principally about an attempt by prison officials to thwart an investigation into Moore's allegations of abuse. Likewise, it did not establish that all evidence related to an alleged attempt to thwart an investigation was *per se* admissible at trial. Instead, this ruling merely permitted Moore's claims regarding the alleged sexual and physical abuse by Granlund and chemical incident involving Hall, Perks, and Fisher to proceed.

10

Second, the Court already addressed—and rejected—the arguments Moore presents here regarding the admissibility of certain "other acts" evidence under Rule 404. In its November 3, 2021 memorandum opinion—issued two days before Moore filed the motions *in limine* at issue here—the Court considered Moore's argument that evidence of an incident involving a separate corrections officer, who is not and never has been a party in this case, was "admissible under Rule 404(b)(2) because it demonstrates that the Defendants' actions were 'part of a common scheme' designed 'to motivate Moore not to pursue his claims.'"[44] The Court rejected this argument for two reasons: (1) "Because Moore's conspiracy claim has been dismissed, any evidence that Moore intends to introduce solely to establish the conspiracy is irrelevant and therefore inadmissible";[45] and (2) "even were the Court to consider evidence of conspiracy relevant to a key issue in the case," whatever "probative value it may have is substantially outweighed by the risk of confusing the issues and misleading the jury."[46]

Moore offers no explanation for why the Court should jettison its prior ruling and permit Moore to explore a litany of extraneous events involving individuals who are not parties to the case. Instead, Moore simply restates the

---

[44]   Doc. 174 at 8 (citing Doc. 168 at 6 n.6).
[45]   *Id*. at 12.
[46]   *Id*. at 12, 14.

arguments he presented in opposition to the Defendants' motion *in limine*.[47] That is insufficient.

Consistent with its ruling on November 3, 2021, the Court finds that testimony and evidence concerning events distinct from and not directly related to Granlund's alleged sexual and physical misconduct in 2010 or the alleged February 2011 chemical incident are not admissible as "other acts" evidence under Rule 404. These separate incidents—most of which involve only individuals who are not parties to the case—are relevant only to dismissed claims.[48] Further, admitting such evidence would inevitably result in a "trial within a trial" that would "not only consume a great deal of time but would distract the jury from the pertinent issues in this case."[49]

Moore's first motion *in limine* is denied.

---

[47]   *Compare* Doc. 181-4 at 6 ("Although the scheme to [prevent an investigation into Moore's grievances claims] was widespread, if not universal at the prison, and different people took on different roles as opportunities presented themselves, [Moore] does not attempt to prove a 'conspiracy' among all of them. Rather, he attempts to prove that there was a 'core cover-up conspiracy'—and that the remaining defendants did highly motivated things to further that goal. That, it is submitted, supplies the motives behind their actions at issue in this trial.") *with* Doc. 168 at 6 n.6 ("[A]s to each remaining defendant, [Moore] submits that the acts of the others in attempting to cover-up the claims here were part of a 'common scheme.' It is not a more coincidence that all defendants' acts at issue in the trial were attempting to 'motivate' [Moore] not to pursue his claims. . . . Rather than a formal 'conspiracy' it must—at the very least—be shown to the jury to be a series of 'parallel actions' undertaken for the 'same final goal.'").

[48]   *See Rodriguez v. Thomas*, 2018 WL 3141556, at *4 (M.D. Pa. June 27, 2018) (Rambo, J.) ("[T]he court finds that the evidence regarding the claims previously dismissed in this case are irrelevant to the issues on trial.").

[49]   *United States v. DeWald*, 2019 WL 5310297, at *7 (M.D. Pa. Oct. 21, 2019).

### C.     Rule 408

In his second motion *in limine*, Moore asks the Court to "reconsider its Order of March 18, 2020 insofar as it 'conditionally barred' [him] from presenting evidence of . . . an alleged settlement offer."[50] But, as with his first motion *in limine*, this motion has no merit.

Although not specifically recognized by the Federal Rules of Civil Procedure, "a motion for reconsideration may be reviewed and considered under either Federal Rule [of] Civil Procedure 59(e) or 60(b)."[51] For such a motion to succeed, the party seeking reconsideration must show at least one of the following three grounds: (1) "an intervening change in the controlling law"; (2) "the availability of new evidence that was not available when the court granted the motion"; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice."[52]

The United States Court of Appeals for the Third Circuit explained that "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."[53] As such, a reconsideration

---

[50]  Doc. 181-6 at 7. Specifically, Moore alleges "that someone came to his cell in solitary confinement and offered him $20,000 to cease and desist with his complaints and request for a criminal investigation of his sexual and physical abuse by defendant Granlund." *Id*. at 2.

[51]  *Gaballa v. Tanner*, 2013 WL 2949350, at *1 (M.D. Pa. June 14, 2013); *see also Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990) (motions for reconsideration are functional equivalents of motions to alter or amend judgment under Fed. R. Civ. P. 59(e)).

[52]  *Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 251 (3d Cir. 2010).

[53]  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

motion "is not to be used as a means to reargue matters already argued and disposed of by prior rulings or to put forward additional arguments which it could have made [but] neglected to make before [the ruling at issue]."[54] In short, the reconsideration of a ruling is an extraordinary remedy and should be granted sparingly.[55]

Moore neither alleges a change in the controlling law nor presents new evidence not previously before the Court. Indeed, during the November 9, 2021 pretrial conference, Moore's attorney acknowledged that he filed the motion for reconsideration after rereading the Rule 408 and realizing that he could have (and perhaps should have) raised arguments based on section (b) of that Rule prior to the Court's March 2020 ruling. Moore's counsel does not claim that section (b) was recently added to the Rule—it wasn't.[56] Instead, he acknowledges that he simply was not familiar with that portion of the Rule. That is not a valid basis for seeking reconsideration of a prior ruling.[57]

Regardless, Moore has not established that a reversal of this Court's March 2020 ruling—barring from admission at trial any evidence related to an alleged settlement offer—is necessary "to correct a clear error of law or fact or to prevent

---

[54] *Dodge v. Susquehanna University*, 796 F. Supp. 829, 830 (M.D. Pa. 1992) (McLure, J.) (internal quotation marks omitted).

[55] *Gaballa*, 2013 WL 2949350 at *2.

[56] Rule 408 was last amended in 2011. *See* Fed. R. Evid. 408 advisory committee's notes (2011 Amendments).

[57] *See Dodge*, 796 F. Supp. at 830.

manifest injustice."[58] As the Court explained, "any testimony from Moore regarding what an unidentified individual said outside of the courtroom or a hearing would constitute inadmissible hearsay."[59] Moore again offers no argument that such statements would be admissible under one of the exceptions to the hearsay rule.[60]

Further, the Court held that any evidence of an alleged settlement offer "would appear to be irrelevant."[61] The Court explained that "[a]ssuming that a settlement offer was in fact extended, such an offer proves nothing about the claims against the Defendants."[62]

In response, Moore again ignores this Court's prior rulings and attempts to broaden the scope of the case beyond the discrete issues that remain. Moore asserts that evidence of the alleged settlement offer is "admissible to prove [his] essential contention in this case":

> [T]hat he raised complaints as to Granlund's criminal sexual abuse and sought a criminal investigation by the State Police and local District Attorney over the long period before and after he was kept virtually entirely *incommunicado*, in solitary confinement for over eight months.[63]

---

[58] *Howard Hess*, 602 F.3d at 251.
[59] Doc. 146 at 21.
[60] *See id*. as 21 n.87; *see also* Doc. 181-6.
[61] Doc. 146 at 21.
[62] *Id*.
[63] Doc. 181-6 at 2.

But, as explained, that's not what this case is about—at least, not at this juncture. The remaining counts concern only the alleged physical and sexual abuse by Granlund and the 2011 chemical incident.[64] The conspiracy claim was dismissed in 2014.[65] There are no remaining claims through which Moore seeks redress for an alleged scheme to prevent a criminal investigation. Any evidence offered solely to prove the existence of such a scheme is therefore irrelevant and inadmissible.

Moore's second motion *in limine* is denied.

### D.   Additional Matters

During the November 9, 2021 pretrial conference, Moore's attorney, Stuart Niemtzow, Esquire, raised two additional issues that warrant brief consideration. Specifically, the Court must address (1) the admissibility of certain "Moore-created documents," and (2) Mr. Niemtzow's desire to refer to Moore at trial by his recently discovered birth name, "Bobby Tom."

### 1.   "Moore-Created Documents"

At the pretrial conference, Mr. Niemtzow presented the Court with a binder containing a multitude of documents that he described as the "universe" of material he intends to introduce as evidence at trial. Included in this binder are a large collection of "Moore-created documents"—that is, grievance records and other inmate requests Moore filed while serving his prison sentence at SCI Rockview. In

---

[64]   Doc. 103 at 64.
[65]   Doc. 39 at 12–13.

the binder, these documents are not individually marked, separated, or tabulated. Instead, they are simply filed behind a single tab without any further delineation. That is unacceptable.

As detailed in this Court's November 11, 2021 Scheduling Order, Moore must provide the Court with an exhibit list, two physical sets of the exhibits (contained in three-ring binders), and a copy of the exhibits on a USB flash drive.[66] Each document that Moore intends to offer into evidence must be individually identified in the exhibit list, tabulated in the three-ring binders, and saved on the USB flash drive.[67] The Scheduling Order also provides the required naming convention for the electronic copies of the exhibits on the USB flash drive.[68]

If the parties can agree on the admissibility of certain exhibits, they must docket with the Court in advance of trial a stipulation detailing which documents they will accept into evidence without objection.[69] All documents on which the parties cannot reach agreement must be offered into evidence at trial and will be admitted only if doing so accords with the Federal Rules of Evidence.

### 2.    "Bobby Tom"

In the proposed statement of uncontested facts attached to his pretrial memorandum, Moore presented for the first time a curious fact about his identity:

---

[66]   Doc. 183 ¶ 5.
[67]   *Id.*
[68]   *Id.* ¶ 5(c).
[69]   *Id.* ¶ 8.

"Plaintiff's birth name is 'Bobby Tom.'"[70] It seems that Moore has long been mistaken about the name given him at birth. At the pretrial conference, Mr. Niemtzow informed the Court that at trial he intends to refer to Moore by his "real" name—that is, Bobby Tom—and asked that the Defendants and the Court do so as well.

The Court has no control over how Mr. Niemtzow chooses to introduce and refer to his client at trial—that is a decision left to Moore and Mr. Niemtzow. However, the Court is under no obligation to oblige Mr. Niemtzow's request. Moore initiated this lawsuit in February 2012 under the name "Thomas Moore."[71] Throughout the course of this litigation, Moore has consistently referred to himself as "Thomas Moore."[72] The parties uniformly identify Moore as "Thomas Moore" in their court filings.[73] In all the relevant documentary evidence that the parties intend to offer at trial, Moore is listed as "Thomas Moore."[74]

The Court concludes that if it refers to Moore at trial by another name, it will confuse the jury and distract from the issues in this case. As such, the Court will refer to Moore at trial by the name under which he brought this lawsuit: Thomas Moore.

---

[70] Doc. 181-3 ¶ 58.
[71] Doc. 1.
[72] *See, e.g.*, Doc. 83 (April 29, 2016 Exhaustion Hearing Tr.) 4:3–5:17.
[73] *See, e.g.*, Doc. 168.
[74] *See* Doc. 177; Doc. 178-2.

III.   **CONCLUSION**

This case is set to go trial on November 29, 2021—eleven days from the date of this opinion. Although originally broad in scope, the case has been narrowed to three discreet issues: (1) the alleged sexual assault by Granlund in the fall of 2010; (2) the alleged physical assault by Granlund on December 6, 2010; and (3) the alleged chemical incident on February 19, 2011 involving Hall, Perks, and Fisher. To be admissible at trial, evidence must be relevant to at least one of these three issues. Any evidence that Moore intends to introduce solely to establish the existence of a broader conspiracy is irrelevant and therefore inadmissible. As such, Moore's motions *in limine* are denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge